**Joseph LAH et al., Plaintiffs,**

v.

**SHELL OIL CO., Defendant.**

**No. 7045.**

United States District Court,
S. D. Ohio, W. D.

June 2, 1970.

Arnold Morelli, Cincinnati, Ohio, for plaintiffs.

Robert H. French, Cincinnati, Ohio, for defendant.

## ORDER

HOGAN, District Judge.

The second amended complaint in this case claims violations of Sections 1 and 2 of Title 15 U.S.C.A. It is claimed that the defendant has engaged in tying practices and the exercise of dominating power in an attempt to monopolize an

appreciable part of commerce and/or to restrain an appreciable portion of trade or commerce. Specifically, it is claimed that Shell basically controls the sale of a product, Shell gasoline, which is sufficiently attractive in and of itself to enable Shell to condition its sale to one who is agreeable to entering into short-term (one year) leases of real estate, i. e., service stations owned by Shell; to likewise condition its sale under short-term contracts. The claim is that one entering into such short-term leases with such a dominating lessor-seller quickly enters a position of utter helplessness as a result of which he is additionally tied to further unwanted products, such as trading stamps, games, etc. The plaintiff's claim is really a double tie sale. The first knot is based on the classic—if there remains any classic after *Fortner*—tie sale. The second knot is based on Federal Trade Commission v. Texaco Inc., 393 U.S. 223, 89 S.Ct. 429, 21 L.Ed.2d 394 (1968) and specifically on this language:

"* * * Texaco's dominant economic power was used in a manner which tended to foreclose competition in the marketing of TBA. The sales commission system for marketing TBA is inherently coercive. A service station dealer whose very livelihood depends upon the continuing good favor of a major oil company is constantly aware of the oil company's desire that he stock and sell the recommended brand of TBA."

See also Shell Oil Co. v. F.T.C., 360 F.2d 470 (5th Cir., 1966), at 487:

"A man operating a gas station is bound to be overawed by the great corporation that is his supplier, his banker, and his landlord."

The action is a treble damage one. Any party to such an action has an unquestioned right to a jury trial on every question of fact. Beacon Theatres v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). Shell denied, among other things, that any coercion has been exercised on the plaintiff or anyone else, either (a) originally in connection with the sale of gasoline, or (b) subsequently, based on its overall dominating position, and has demanded a jury trial.

The plaintiff has filed his action as a class action, claiming that the class consists of approximately 140 Shell dealers similarly situated in five Ohio counties in southwest Ohio. The plaintiff claims that his class action is within Civil Rule 23(b)(3). The defendant contests this. This case, then, in its present posture, is before this Court under 23(c) for a determination whether this action may be maintained by this plaintiff as a class action under Rule 23.

The defendant has not only filed an answer, but also a counterclaim, charging the plaintiff with a conspiracy in restraint of trade by combining with others to raise and fix prices, eliminate signs, stop giving trading stamps, etc. The essence of the counterclaim must certainly be considered in connection with the question before this Court. See Louisiana Petroleum Retail Dealers v. Texas Co., 148 F.Supp. 334 (W.D.La., 1956), for example. It is obvious that the issues, based on the claim set forth in the complaint and in the counterclaim, should certainly be tried together.

Considerable of the differences between the parties to this case on the class action question are set at rest in this Circuit by Mader v. Armel, 402 F. 2d 158 (1968), and Foster v. Detroit, 405 F.2d 138 (1968). For instance, one of the core questions is simply, "Are there substantial questions either of law or fact common to all?" Or stated otherwise, the presence of other questions, whether related to liability or damage, is not an insuperable objection—if there are common core questions which "are predominating."

There are two basic and predominating questions. Each is a question of fact. The first predominating fact question is whether or not Shell refused

to sell the plaintiff and other dealers Shell gasoline for sale in stations owned by plaintiff and other individuals; or stated otherwise, whether Shell compelled each individual to sign a lease for the duration of a year. That is a question of fact; or, with respect to 140 dealers, it is not one question, but 140 separate questions of fact. Individual inquiry would be required. See Moscarelli v. Stamm, 288 F.Supp. 453 (E.D. N. Y., 1968); Chazin v. Gulf, 419 F.2d 396 (3rd Cir., 1969). While class actions have been maintained in the antitrust field, they have been limited [with the possible exception of Siegel v. Chicken Delight, Inc., 271 F.Supp. 722 (N.D.Cal. 1967), modified Chicken Delight, Inc. v. Harris (Siegel), 412 F.2d 830 (9th Cir., 1969)] to cases in which a single question of fact, such as conspiracy to fix prices, furnishes the foundation upon which the individual damage claims rest as a matter of course.

■■ The same is true as one looks at the second claimed knot. Ford Motor Co. v. United States, 335 U.S. 303, 69 S. Ct. 93, 93 L.Ed. 24 (1948) still stands. It still appears to be the law that while a dominant may not coerce—without running afoul of the antitrust laws—nonetheless the dominant may still persuade, or expose, or argue. While F.T.C. v. Texaco, supra, used very strong language, nonetheless the phrase "per se" was obviously avoided. See Shell Oil Co. v. F.T.C., supra, 360 F.2d 470, at 487:

"The *per se* doctrine has a charm all its own in antitrust litigation. When a *per se* rule is applicable in a given situation, businessmen know where they stand. Lawyers, for the government or for private clients, are saved the necessity of building a record bulging with complicated facts, statistical analyses, market data and other formidable economics material. Here, with the proper authorization, the incantation of two words would enable the Court to sweep most of nine volumes of record under the rug. We hold, however, that in the circumstances this case presents the Supreme Court has not yet authorized that incantation." [Cert. was denied.]

It all adds up to this: There is as yet no per se rule of law which would automatically put a dominee who buys from a dominor in a damage position; in between the relation of dominance and liability is a question of fact—persuasion v. coercion. As applied to 140 dealers, there are 140 questions of fact. Our conclusion is therefore that the overall predominating questions presented by the plaintiff's claim are questions of fact and while the same questions of fact exist with respect to the claims of any other member of the class, a conclusion as to one member is not common or determinative, or even relevant when the question arises with respect to another member. The "predominating" questions are individual ones and not common.

It further appears to this Court that the difficulties likely to be encountered in the management of this case as a class action outweigh the benefits that might be expected from its maintenance as such. The *City of Detroit* case, supra, did not involve a jury problem. This one does. While the new rules on their face permit severance of issues in jury trials, the problem of separate juries still remains. United Airlines v. Wiener, 286 F.2d 302 (9th Cir., 1961). Also, assuming the plaintiff, individually or as a class, were successful on the liability issue, there still would have to be X number of trials on the damage issues—member by member.

The non-frivolous counterclaim would present administrative problems not merely with respect to notice but in respect of determining the liability of which members of the class.

With respect to the class action question and the other motions pending in

this case, this Court determines and orders:

a) That this action may not be maintained as a class action. The plaintiff may have 30 days within which to file a third amended complaint, setting forth his individual claims; the defendant may answer and/or countercomplain within 30 days thereafter; the plaintiff may reply within 30 days thereafter.

b) The motion to suppress is passed for consideration at the pretrial of this case.

c) The defendant's motion for a default judgment, based on plaintiff's failure to reply, is denied.

d) Plaintiff's motion for leave to file a reply is mooted by reason of "a" above, but is granted for the record.

e) The motion to dismiss for failure to answer certain interrogatories will be submitted in the ordinary course under the ordinary rules of this Court.