Robert F. SHAW, on Behalf of himself
and all others similarly situated

v.

**MOBIL OIL CORPORATION.**

Civ. A. No. 73–146.

United States District Court,
D. New Hampshire.

Nov. 14, 1973.

Matthias J. Reynolds, Devine, Millimet, Stahl & Branch, Manchester, N. H., for plaintiff.

Joseph M. Kerrigan, Hamblett, Kerrigan, LaTourette & Lopez, Nashua, N. H., for defendant.

## OPINION

BOWNES, District Judge.

This case arises out of an allocation program which Mobil Oil Corporation (hereinafter Mobil) instituted in the "Maine/New Hampshire Resale District" and communicated to the district's independent gas station dealers through a bulletin issued on June 1, 1973. The allocation program limited the dealers' gasoline purchases for the months of June through September, 1973, to 100%[1] of their average purchases during the same period in 1972. Plaintiff, an independent Mobil dealer, brought this action claiming that the allocation program breached his gasoline purchasing agreement[2] with Mobil and constituted violations of certain antitrust laws. 15 U.S.C. §§ 1, 2, 13. Jurisdiction is based on diversity of citizenship and amount in controversy, as well as alleged violations of federal statutes. 28 U.S.C. §§ 1331, 1332.

Plaintiff seeks to maintain the action in a representative capacity for the approximately one hundred and eight[3] Mo-

---

1. In August of 1973, Mobil permitted the dealers in the district to purchase 5% more gasoline than they purchased in August of 1972.

2. See Appendix to Complaint.

3. Defendant's Brief, page 2. However, plaintiff has alleged that there are one hundred and eleven such dealers. Plaintiff's Brief, page 1.

bil dealers similarly situated in the States of Maine and New Hampshire. The action is presently before this court on plaintiff's motion to determine whether the case may go forward as a class action under Fed.R.Civ.P. 23.

## A. THE UNDERLYING CLAIMS

### 1. The Breach of Contract Claim

Plaintiff alleges that all of the Mobil dealers he seeks to represent have signed standard contracts with Mobil. I have examined three of the contracts[4] and they are generally similar, providing, inter alia, the following:

(1) that the buyer must purchase, within established minima and maxima, certain amounts of petroleum products;

(2) that the amounts purchased within these limits are "to be those ordered by buyer"; and

(3) that "seller shall not be liable for any loss . . . due to any delay or failure in performance . . . (b) when the supply of products . . . contemplated by the seller is interrupted, unavailable or inadequate because of . . . any cause beyond its control."

The gist of the breach of contract claim is that, under Mobil's allocation program, the dealers' purchases of gasoline are limited to "significantly less than what the independent Mobil dealers are entitled to under their contract [sic]." Complaint, Par. 5. Plaintiff further maintains that the "[gas] shortage complained of by Mobil . . . must be considered 'manufactured,'" in that Mobil knew of the "impending petroleum shortage well in advance," and not only "failed to take adequate mea-

sures to prevent its default under the contract agreements," but also irresponsibly continued on a "nationwide policy of expansion." Complaint, Par. 8. See NH RSA 382–A:2–306. Mobil, of course, contends that the energy crisis has caused fuel shortages, that such shortages were unforeseeable and beyond their control and that the allocation program is not illegal under the terms of their contracts. It is also Mobil's position that its allocation figures for 1973 did not provide for significantly less gasoline than the dealers were entitled to under their contracts.

### 2. The Antitrust Claims

The factual bases of plaintiff's antitrust claims are that Mobil has (1) opened "several" company-owned and operated service stations, (2) supplied gasoline to these stations[5] in unlimited quantities at lower prices than to independent dealers, while (3) rationing the independents. Plaintiff claims that this action on Mobil's part is a conspiracy and an attempt to raise and fix prices through price discrimination and the prevention of volume sales by independents, to restrain trade, and to eliminate competition and monopolize the retail gasoline industry in New Hampshire and Maine. Plaintiff claims that by these actions Mobil has violated Sections 1 and 2 of the Sherman Act and Section 2 of the Clayton Act, 15 U.S.C. §§ 1, 2, 13. Mobil, of course, denies these allegations.

## B. FINDINGS AND RULINGS

 Plaintiff conceded on oral argument that his main reliance is on Rule 23(b)(3), Fed.R.Civ.P., and the issue will be determined on that basis.[6] To

---

4. The contracts are those of plaintiff Shaw, Robert F. Gonzales, and Raymond A. Murby. All contracts are attached to plaintiff's complaint or affidavits in support thereof.

5. It is also claimed that Mobil has sold gasoline to certain "selected customers in the

States of Maine and New Hampshire at prices or with advantages not accorded to all customers . . . ." Complaint, Par. 31.

6. Although particularly appropriate in civil rights cases, "[s]ection (b)(2) is not limited to civil-rights cases." Advisory Committee

maintain a (b)(3) class action, plaintiff must, of course, satisfy the prerequisites of Rule 23(a), as well as those of Rule 23(b)(3). Therefore, plaintiff must establish at least that:

(1) there are "questions of law or fact common to the class" (23(a)(2));

(2) "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." (23(b)(3)); and

(3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." (23(a)(3)).

It is by now a well settled proposition that "[t]he burden is on the plaintiffs to establish their right to maintain a class action." Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F. R.D. 452 (E.D.Pa.1968) at 457. *See* Demarco v. Edens, 390 F.2d 836 (2nd Cir. 1968) at 845; Bel Air Markets v. Foremost Dairies, Inc., 55 F.R.D. 538 (N.D. Cal.1972) at 540 n. 1.

 While it is inappropriate to consider the merits of plaintiff's claims in determining whether or not a class action is maintainable under Rule 23, Mill-

er v. Mackey International, Inc., 452 F. 2d 424 (5th Cir. 1971); Siegel v. Chicken Delight, Inc., 271 F.Supp. 722 (N.D. Cal.1967) at 726, it is necessary to appreciate fully the issues and the nature of the proof required at trial in order to determine whether or not common questions exist, and, if so, whether they predominate. Abercrombie v. Lum's, Inc., 345 F.Supp. 387 (S.D.Fla.1972) at 390. *See* City & County of Denver v. American Oil Co., 53 F.R.D. 620 (D.Colo.1971) at 633.

### 1. *The Antitrust Claims*

Counts II and III of the complaint basically charge that Mobil has conspired to restrain trade and attempted to monopolize in the retail gasoline industry in Maine and New Hampshire, in violation of the Sherman Act, 15 U.S.C. §§ 1 and 2. In order to establish a private right to recovery for these violations under Section 4 of the Clayton Act, each class member must prove: (a) a conspiracy and/or an attempt to monopolize by Mobil; (b) the fact that he was "injured in his business" by such conspiracy or attempt [impact]; and (c) the amount of damage he has suffered. 15 U.S.C.A. § 15. ABA Antitrust Developments 1955–1968 at 279. *See* Haverhill Gazette v. Union Leader Corp., 333 F.2d 798, 802 (1st Cir. 1964), cert. denied 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343 (1964).[7]

---

Notes, Proposed Amendments to Rules of Civil Procedure for the United States District Courts, 39 F.R.D. 73, 102. In fact, certain price discrimination cases were thought to be within the scope of Rule 23(b)(2). *Id.* But as will be demonstrated, the particular facts of this case take it out of the ambit of price discrimination cases contemplated by (b)(2). Moreover, as defendant points out, many of the class members were not using their full allotments under their contracts and, therefore, were not prejudiced in any way by the institution of the allocation program. Deft.'s Brief at 11–12.

7. *See also* Hobart Brothers Co. v. Malcolm T. Gilliland, Inc., 471 F.2d 894, 901 (5th

Cir.), cert. denied 412 U.S. 923, 93 S.Ct. 2736, 37 L.Ed.2d 150 (1973); Gray v. Shell Oil Co., 469 F.2d 742, 748–749 (9th Cir. 1972), cert. denied 412 U.S. 943, 93 S.Ct. 2773, 37 L.Ed.2d 403 (1973); Siegel v. Chicken Delight, Inc., 448 F.2d 43, 52 (9th Cir.), cert. denied 405 U.S. 955, 92 S.Ct. 1172, 31 L.Ed.2d 232 (1971); Winckler & Smith Citrus Products Co. v. Sunkist Growers, Inc., 346 F.2d 1012 (9th Cir. 1965) at 1014 n. 1; Herman Schwabe, Inc. v. United Shoe Machinery Corp., 297 F.2d 906 (2nd Cir. 1962) at 909–910; Carswell Trucks, Inc. v. International Harvester Co., 334 F. Supp. 1238 (S.D.N.Y.1971) at 1239.

The question is, then, will the proof of these elements be so similar for all members of plaintiff's proposed class that "a class action would achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Advisory Committee Notes, Proposed Amendments to the Rules of Civil Procedure for the United States District Courts, 39 F.R.D. 73 at 102–03. Realistically, the answer must be "no." With regard to the alleged conspiracy and attempt to monopolize charges, plaintiff's factual allegations are certainly not typical of the class. The core of this claim lies in plaintiff's assertion that Mobil has opened "several" company-owned and operated gas stations which it is supplying with unlimited gas at reduced prices while rationing the supply of gas to independents. While it is true that Mobil has recently opened a company-owned and operated high-volume self-service station, very near to plaintiff, this is not a situation common throughout Maine and New Hampshire. In fact, Mobil has shown that there are only three such company-owned stations throughout the two states and that only two of these are high-volume self-service stations. See Mobil's Answers to Interrogatories. Therefore, proof of this situation is not necessarily helpful to the other members of the class.

The proof of impact (fact of injury), the second prerequisite to rcovery in private antitrust cases, will necessarily be different for each member. Such proof would depend on proximity to the company-owned station, other changes which may have occurred in the areas, and a number of other factors which, while possibly common among many of the members, would require a separate factual showing for each.[8]

Furthermore, it is undisputed that the issue of damages is peculiarly individual and not susceptible of class determination. The nature of the damages sought here makes this particularly so. Plaintiff is not simply seeking lost profits based on sales of gasoline which each dealer had made in the past or clearly could have made during the months in issue. To be entitled to damages for lost profits in this case, each member would have to prove increased sales capacity in his own individual circumstances. Moreover, lost profits from incidental sales of tires, batteries, and accessories and automotive maintenance and repair services are claimed. These too require individual proof. Finally, damages are being claimed for loss of trained personnel, alienation of clientele and damage to reputation and goodwill. Complaint, Par. 10. Such claims are by their very nature peculiarly individual. In addition, plaintiff does not present a typical damage claim, as he has admitted that his claim is in large part based on a recently initiated volume pricing scheme which the allocation program prevented him from carrying out. Shaw's Deposition at 75–78, 189–91.

Counts IV and V essentially allege price discrimination on the part of Mobil. 15 U.S.C. § 13. As with the alleged Sherman Act violations, recovery on this claim also depends on proof of three elements: (a) price discrimination; (b) actual injury; and (c) the amount of damage. In this regard, it has been noted that:

> One essential element of a price discrimination case is that there exists competition between the favored customer and the disfavored customer. [Citing cases.] Without this element of competition the disfavored customer is not injured by any price discrimination. . . . In the present action, therefore, there must be proof of competition between the favored Lucky store and each individual retail store. . . . Bel Air Markets, *supra*, 55 F.R.D. at 540–541.

---

8. See cases cited in note 7, *supra*.

Moreover, the questions relating to the fact of injury and the amount of damage are still very pervasive. Therefore, although the factual basis of the price discrimination allegation may be somewhat broader[9] than that alleged in Counts II and III and, therefore, perhaps more typical, individual questions still predominate.

### 2. *The Breach of Contract Claim*

It would seem at first blush that this claim forms a basis for maintaining the class action. The dealers' supply contracts, as outlined earlier, all contain the same basic features. Moreover, with regard to liability, the issues are not only common, but nearly identical. If Mobil has breached its contract with one of the dealers, then it has breached its contracts with all of the dealers.[10]

However, I must assume that the damage aspect of this case is substantial.[11] Plaintiff's prayer is for $10,000,000 and, as mentioned above, the theory of damages is sophisticated and must be individually computed as to each member's claim. Since the proof of contract damages would be nearly the same as, if not identical with, proof of the antitrust impact and damage claims discussed above, much of what has already been said in respect of those claims applies here. In a word, the individuality of the damage questions predominates over the common liability questions. And this is especially so

when the antitrust and contract claims are viewed together.

### C. SUMMARY

In summary, it can be said that the damages aspect of this case predominates. With regard to the antitrust claims, each member would have to prove in a separate "mini-trial," both impact and amount of damages. Neither plaintiff's nor any other member's proof in respect of these issues would be dispositive of claims made by other class members. Although it cannot be denied that on the breach of contract claim there are common questions regarding Mobil's liability, the value of this suit to the class of independent Mobil dealers depends on their ability to collect damages, and the nature of damages sought here would require individual proof by each class member.

Even the value of the prayer for injunctive relief to the class turns on a demonstration that many, if not most, of the members are in need of more gas than they receive under the allocation program. And whatever the merits of such a claim, it is obvious that plaintiff's reliance on a volume-pricing scheme makes his claim atypical.

This is not the typical antitrust conspiracy, vertical arrangement, or horizontal price fixing scheme, where liability flows from a "common nucleus of operative facts." Siegel v. Chicken Delight, *supra,* 271 F.Supp. at 726; Aber-

---

9. See note 3, *supra,* and accompanying text.

10. If this case proceeds on the basis of the contract claim alone, then jurisdiction must be predicated on diversity; and New Hampshire law will probably be applicable. Under New Hampshire law, it seems that nominal damages would be awardable without the "impact" element necessary for recovery under the antitrust claims. See ALI Restatement of Contracts (1932) § 328, and cases cited in New Hampshire Annotations thereto at 119. However, this problem need not be considered at this time.

11. If plaintiff bases his claim on the nominal damages probably available to all class mem-

bers, see note 10, *supra,* then problems with regard to the $10,000 amount in controversy jurisdictional requirement may exist. Since this action is based on diversity, all members of the class must have a claim in excess of $10,000 in order for the action to proceed as a class action. *See* Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1968); *but see* Zahn v. International Paper Co., 469 F.2d 1033 (2nd Cir. 1972), cert. granted 410 U.S. 925, 93 S.Ct. 1370, 35 L. Ed.2d 585 (1973). *Zahn* challenges the rule in Snyder v. Harris. See the summary of argument before the Supreme Court in 42 L.W. 3233 (October 23, 1973).

 

crombie v. Lum's, Inc., *supra,* 345 F. Supp. at 390–391; *Philadelphia Electric Co., supra;* In re Antibiotics Antitrust Actions, 333 F.Supp. 278 (S.D.N.Y. 1971); City of Philadelphia v. Morton Salt Co., 248 F.Supp. 506 (E.D.Pa. 1965); *Cf.* Lah v. Shell Oil Co., 50 F.R. D. 198 (S.D.Ohio 1970). Nor is the contract claim a situation where, as in Berman v. Narragansett Racing Ass'n., 414 F.2d 311 (1st Cir.), cert. denied 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681 (1969), after resolution of the class issue, defendant's liability is fixed and each plaintiff's recovery easily and accurately determined.

For the foregoing reasons, I deny plaintiff's motion to have this case proceed as a class action.

So ordered.