Debra OTT

v.

**SPEEDWRITING PUBLISHING CO., INC., and ITT Educational Services, Inc.**

Civ. No. 3-74-103.

United States District Court,
E. D. Tennessee, N. D.
July 18, 1974.

Archie R. Carpenter, Knoxville, Tenn., Oliver B. Dickins, Jr., Nashville, Tenn., for plaintiff.

Harold B. Stone, Stone & Bozeman, Knoxville, Tenn., Covington & Burling, Washington, D. C., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Before this Court for consideration are the motions of plaintiff for a preliminary injunction and for class action certification.

It is clear that this is not a proper case for issuance of a preliminary injunction. The pleadings and briefs indicate that there are many elusive questions of fact and law involved in this case and the issuance of an injunction at this time would not be appropriate. See First-Citizens Bank & Trust Co. v. Camp, 432 F.2d 481 (4th Cir. 1970);

Crowther v. Seaborg, 415 F.2d 437 (10th Cir. 1969).

■ The Court is likewise of the opinion that this is not a case for class action certification. The burden rests on plaintiff to show that she can meet the requirements of Rule 23, and these requirements are independent of her likelihood of success on the merits of the case. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). In the opinion of the Court, plaintiff would have a better chance to succeed by a trial in which she is the only plaintiff, rather than in a trial in which she seeks to represent some 15,000 or 20,000 plaintiffs.

Plaintiff is a student in a local business college which teaches the "Speedwriting" method of shorthand. Her sister was a former student at the same school. Plaintiff wanted to use her sister's books in completing the Speedwriting course.[1] Plaintiff says that the business school aided and abetted by defendant, ITT Educational Services, Inc., (ITTES), refused to permit her to use the books of her sister, thus adding $30.00 to the cost of her instruction.[2]

The defendant asserts that this suit cannot be maintained as a class action on several grounds. Defendant first contends that plaintiff's claim is not typical of those she seeks to represent as required by F.R.Civ.P. 23(a)(3) and that she is not a proper representative of the proposed class under Rule 23(a)(4).

Plaintiff had access to a used set of books by a series of fortuitous events in that her sister was willing to supply her with usable workbooks whereas other students often tear out the pages of such workbooks after filling them in. In addition to this, the plaintiff's sister did not desire to keep the two reference texts for her own use.[3] Defendant also showed that in certain of the 260 other schools students are not charged separately for the books; rather the books are provided as an integral part of the course. Some schools allow students to make use of used books, provided they are not written in nor the pages torn out.

■ ■ It is necessary to consider factual and legal differences between plaintiff and the proposed class she seeks to represent. Jacobs v. Paul Hardeman, Inc., 42 F.R.D. 595, 599 (S.D.N.Y.1967). Furthermore, the "broadly binding effects of Rule 23" demand

1. The set of five books in question here consist of three workbooks with perforated pages and which are to be completed by students, and two reference books (a dictionary and transcription manual).

2. Plaintiff asserts violations of §§ 1 and 2 of the Sherman Act (Title 15 U.S.C. §§ 1, 2), and § 3 of the Clayton Act (Title 15 U.S.C. § 14). She also asserts that the Court has pendent jurisdiction to hear her claim under T.C.A. § 69–101 as to the subclass comprised of Tennessee students during the period in question. Plaintiff asserts that the following contract provisions in the common contract between ITTES and some 260 business school licensees across the country constituted an illegal tying agreement under the Clayton Act and a *per se* violation of the Sherman Act.

Para. 3: "Licensee covenants and agrees to do the following . . .

"(e) Purchase from Licensor for delivery to each student enrolled for said Course one

(1) set of SPEEDWRITING shorthand books . . . which shall be delivered to the student and become the student's property . . ."

Para. 4: "Licensee covenants and agrees that Licensee shall not:

"(a) . . . dispose of any of the books of said course except to Licensee's students as provided in Paragraph 3(e) hereof."

The contract also prohibits the business college from teaching or offering, during the licensed period, any system of shorthand using letters of the alphabet other than the Speedwriting system. Para. 4(a).

The contract and a "Textbook Price List" are exhibits to the Pre-trial Order.

3. Defendant showed by affidavit that the schools recommend that the student keep the reference books for future use. See e. g. Aff'd of Marion A. Condie, sworn to May 28, 1974 in support of defendant's motion to strike the class action allegations.

that the issue of adequate representation be scrutinized closely. Pomierski v. W. R. Grace & Co., 282 F.Supp. 385, 392 (N.D.Ill.1967); Fischer v. Kletz, 41 F. R.D. 377, 383 (S.D.N.Y.1966). The Court cannot overlook the fact that no one else but plaintiff has come forward to press the claim that plaintiff asserts. Also, in light of the relative smallness of plaintiff's claim, some further doubt is created as to the adequacy of plaintiff's ability to represent the proposed class in this matter. Moreover the relief plaintiff seeks may be undesirable for those who desire to keep the two reference books and/or who have written in their workbooks so as to make them unusable to anyone else. These persons should not be required to request exclusion under Rule 23(c)(2).

■ In the opinion of the Court, plaintiff's claim is not typical of the class she seeks to represent. F.R.C.P. 23(a)(3). Also, because plaintiff's situation is or may be different from the situation of other students in schools throughout the United States, she cannot properly represent the class under Rule 23(a)(4). As to the latter conclusion, the Court is convinced that her attorneys would diligently present her claim and that they could and would properly represent all people, if any, that may be members of plaintiff's class.

The Court is convinced that this case would not be manageable as a class action. In the first place the case is filed for an alleged violation of the antitrust laws. The antitrust laws are among the most difficult areas of the law in this country. Further complicating this particular case is the fact the alleged violations of the antitrust laws occurred at some 260 business schools across the country whose individual agreements with their respective students varied widely.

It is true that tying arrangements are *per se* unreasonable

" . . . whenever a party has sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product and a 'not insubstantial' amount of interstate commerce is affected." Northern Pacific Railroad Co. v. United States, 356 U.S. 1, 6, 78 S.Ct. 514, 518, 2 L. Ed.2d 545 (1958)

In a later case involving illegal tying arrangements, the Supreme Court held that in determining whether a "not insubstantial" amount of interstate commerce is involved the

" . . . relevant figure is the total volume of sales tied by the sales policy under challenge, not the portion of this total accounted for by the particular plaintiff who brings the suit." Fortner Enterprises, Inc. v. United States Steel, 394 U.S. 495, 502, 89 S. Ct. 1252, 1258, 22 L.Ed.2d 495 (1969).

Thus the Court would become involved with aggregating the foreclosure of sales of the tied product (the set of books) to the competitors of defendant in some 200 metropolitan areas across the country. See *Fortner Enterprises, Inc.*, supra, at 501, n. 1, 89 S.Ct. 1252.

Additionally, due to plaintiff's allegations under § 2 of the Sherman Act, a market share analysis in these areas would also have to be undertaken. See United States v. Grinnel Corp., 384 U.S. 563, 570–571, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). Unlike *Grinnel Corp.*, the locus of competition in the instant case is apparently the 200 or so metropolitan areas in which the schools are found. Defendant contends that the business schools in question are subject to substantial competition from not only other business schools but also from colleges and universities which offer various types of shorthand courses. Inevitably, the Court would become involved in 200 or so virtually unique antitrust inquiries.

Furthermore, under the express provisions of Rule 23(b)(3), the Court must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members . . ." As discussed previously, the agreements between the licensee schools and their students have been shown to vary considerably. Problems in this area are inevitable with respect to schools that do not separately charge for the books (e. g. what would be the tied product?) or allow the use of secondhand books.[4]

The contract provisions set out in n. 2, supra, are heavily relied upon by plaintiff in this action to establish that common issues of law or fact as to various members of the class predominate over questions affecting only individual members. However, defendant has shown that the various business schools exercise a great deal of discretion and business judgment with respect to the students' purchase of these books. The most obviously uniform relationship plaintiff has established is that between defendant and the individual licensees, and none of the latter are before this Court.

It is clear that in this case the issues common to the purported class do not predominate over issues that would have to be separately resolved with respect to each of the class members. See Lah v. Shell Oil Co., 50 F.R.D. 198, 200 (S.D. Ohio 1970); Abercrombie v. Lums, Inc., 345 F.Supp. 387, 392 (S.D.Fla.1972).

In conclusion, a word should be said about the problems of notice that plaintiff would confront if this suit were allowed to proceed under 23(b)(3). Individual notice must be sent by the plaintiff to all class members who can be identified through reasonable efforts. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). This burden may well be prohibitive for a single plaintiff with a thirty dollar stake in the controversy.

It is the opinion of the Court that a class action in this instance is not a superior method of adjudication in terms of efficiency. Class certification would result in a relatively small recovery when compared with the extremely high cost of adjudicating this suit.

This memorandum supplements and is in addition to the findings and conclusions made from the bench following oral argument of the respective parties. In view of the conclusions reached, a discussion of additional contentions made by the respective parties is not deemed necessary.

Accordingly, for the foregoing reasons, the Court declines to certify the class under Rule 23(c), F.R.C.P. This action is not intended to prejudice plaintiff in her individual capacity.

---

4. In this latter instance it would seem that only the licensee school would be aggrieved by possible antitrust violations.