Paul **HERRMANN** et al., **Plaintiffs**,

v.

**ATLANTIC RICHFIELD COMPANY**, a **Pennsylvania Corporation**, **Defendant.**

**Civ. A. Nos. 71–842, 73–0799.**

United States District Court, W. D. Pennsylvania.

Dec. 20, 1974.

Daniel J. Beggy, Mansmann, Beggy, Steele & Campbell, Pittsburgh, Pa., for plaintiffs.

David J. Armstrong, M. Richard Dunlap, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for defendant.

## OPINION

TEITELBAUM, District Judge.

The case now before the Court consists of two consolidated actions, the first being Paul Herrmann, Robert Oskin, Rudolph Molnar and Ken T. Homer v. Atlantic Richfield Company, C.A. No. 71–842 (hereinafter referred to as "Herrmann I"), the second being Paul Herrmann, Robert Oskin, Rudolph Molnar, Kenneth T. Homer and Herbert Fedel v. Atlantic Richfield Company, C.A. No. 73–0799 (hereinafter referred to as "Herrmann II"). The case is presently before the Court on plaintiffs' motion for class determination and defendant's motion to dismiss, brought under F.R. Civ.P. 12(b)(6), the action in Herrmann II. Defendant's motion to dismiss will be discussed first.

Some background is necessary to an understanding of status of this case. Herrmann I was originally filed as an action on behalf of Paul Herrmann only against the Atlantic Richfield Company, alleging violations of § 1 of the Sherman Act (15 U.S.C. § 1) and the Clayton Act (15 U.S.C. §§ 14, 15 and 26). Herrmann I did not include any claims based upon alleged violations of the Robinson-Patman Act (15 U.S.C. § 13 et seq.) Hermann I also derived from

an earlier case, Merola et al. v. Atlantic Richfield Company, Civil Action No. 71–1020. Merola was a class action under Sherman I and the Clayton Act which was partially settled; the non-settling portion of the Merola class, that is, those class members who chose to opt-out of the settlement were subsequently referred to Daniel Beggy, Esquire, counsel for plaintiffs in the Hermann I case. The original complaint in Herrmann I was thereafter amended with the court's approval to allege a class action against defendants with additional parties plaintiff. Specifically, by order of this Court of December 20, 1972, leave was given to former lessee dealers and opting-out present lessee dealers in the Merola case to prosecute their claim in the Herrmann I action. After amending the complaint in Herrmann I to add these additional parties, plaintiffs subsequently filed a separate action, Herrmann II, alleging a violation of the Robinson-Patman Act as to defendant ARCO.

Under the umbrella legal theories of Sherman I and II, the Clayton Act and the Robinson-Patman Act, the amended and consolidated complaint in these cases pleads these particular antitrust violations, among others: 1) a contract, combination and conspiracy to set the retail price of gasoline; 2) a "deep-pocket" theory of interstate and intrarea subsidy of price cutting; 3) price discrimination and resale price maintenance; 4) the tying of the sale of tires, batteries and accessories (TBA) to leases and fuel supply.

▰ Under the standard of Rule 12(b)(6) plaintiff has stated a valid claim for relief in Herrmann II. Where a bona fide complaint is filed that charges every element necessary to recover, summary dismissal of a civil case, particularly one brought under the antitrust laws, for failure to set out evidentiary facts can seldom be justified. Knuth v. Erie-Crawford Dairy Co-op Association, 395 F.2d 420 (3rd Cir. 1968). "For an aggrieved party to state a claim for relief under the Sherman Act it is necessary to allege only a *per se* violation of the act and, in a treble damage action, resultant damage." Stavrides v. Mellon National Bank & Trust Company, 353 F.Supp. 1072, 1076 (W.D. Pa.1973). The complaints in this case which allege the particulars of price fixing and tying arrangements, both of which are illegal *per se* under the Sherman Act, are sufficient to survive a 12(b)(6) motion to dismiss.

The situation in this case is to be distinguished from that which applies in another treble damage action recently before this Court, Mastandrea v. Gurrentz International, 65 F.R.D. 52 (W. D.Pa.1974). In the *Gurrentz* case, defendants' 12(b)(6) motion to dismiss for failure to state a claim was granted because plaintiffs had not only failed to allege any *per se* violations of the antitrust laws, but had failed to allege any facts or circumstances which could conceivably have amounted to a violation of the antitrust laws. The distinction between the *Gurrentz* case and the action presently before the Court is self-evident.

▰ Defendant also contends in this regard that price discrimination which is in violation of the Robinson-Patman Act, cannot constitute a violation of either § 1 or § 2 of the Sherman Act. That is, it is contended that the Robinson-Patman Act and the Sherman Act are mutually exclusive statutes and drawing its implication from this premise, defendant suggests that one or the other of these legal theories under which plaintiff proceeds be dismissed, or at least stayed. Such action by this Court is unnecessary—first, because Herrmann I and Herrmann II and their respective legal theories have been consolidated and thus are merged so as to constitute one case under different alternative legal theories and, second because though a verdict of simultaneous Sherman Act and Robinson-Patman Act violations may conceivably be mutually exclusive,

there is nothing to prevent their both being alleged in the same complaint. The question of whether one or both have been violated is at once a legal question and an issue for the finder of fact.

Therefore, for the above-stated reasons, defendant's motion to dismiss Herrmann II will be denied.

### PLAINTIFF CLASS

Herrmann I began as an action by Paul Herrmann alone but as trial approached on that claim, plaintiff added three more individuals as named plaintiffs and amended the complaint to denominate their case as a class action. At the time the amended complaint was filed, two of the named plaintiffs were former gasoline station dealers of defendant and two were present dealers of defendant; all four are or were "lessee dealers", that is, their stations are owned or controlled by Atlantic and the dealers hold the property by way of a lease agreement with ARCO. None of the named plaintiffs in Herrmann I were "contract dealers" that is, persons who either owned the station property outright or held it under a lease from someone other than Atlantic.

The complaint in Herrmann I was further amended into its present form after a partial class settlement was approved by this Court in Merola et al. v. Atlantic Richfield Company, *supra*. The amended complaint in Herrmann I purports to be on behalf of the named plaintiffs, former lessee dealers of Atlantic back to October 29, 1967 and those present lessee dealers who opted-out of the *Merola* class settlement.

Herrmann II lists the same four individuals as plaintiffs as the first case, plus adding a fifth, Herbert Fedel. The Herrmann II complaint was filed on September 20, 1973, at which time Fedel owned two gasoline stations—one of which he leased to his brother who operated it as a contract dealer with ARCO. The other he leased to a Mr. Linder, who also operated it as a contract dealer with Atlantic (ARCO). At the time the complaint was filed, Fedel was not operating any ARCO stations, although he had been a bona fide contract dealer at his own station until 1965, and during the four years prior to the filing of the complaint in Herrmann II he had been a lessee dealer.

The outlines of the class which plaintiffs purport to represent in this consolidated case are as follows: 1) all lessee dealers of ARCO who were lessee dealers between October 29, 1967 and December 19, 1972 but not thereafter; this group is the former lessee dealers class not covered by the class settlement in Merola. This group is believed by defendant to total about 300 persons. No person who became a lessee dealer after December 20, 1972 is or can be a member of the class in this case because the Merola settlement terminated the rights of what were called "future lessee dealers". 2) all lessee dealers who had such status on December 20, 1972 but who were not part of the Merola class settlement. This group is believed by defendant to number about 30 persons, those who represent the "present lessee dealer" sub-class of persons who opted-out or objected to the Merola settlement.

Bearing in mind that the above delineated sub-classes constitute the group which plaintiffs purport to represent, and bearing in mind that the dispute as to class determination in this case centers primarily upon the status of past and present contract dealers, a group whose inclusion would swell the total class to about 700 persons, we turn to the prerequisites of Rule 23 of the Federal Rules of Civil Procedure in order to determine whether or not this case may proceed as a class action.

Rule 23 provides in pertinent part as follows:

"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the

class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

The question before the Court is whether plaintiff has met his burden of establishing all of the requirements set out above. If the requirements are compressed and pared down to their basic elements, without any conceptual overlapping, there are four items a plaintiff must demonstrate in order to have an action certified as a Rule 23 class action. These are, numerosity, superiority, adequate protection of class interests, and commonality, typicality and predominance.

## NUMEROSITY

The first requirement for a valid class action, laid down by Rule 23(a)(1), is that the class must be so numerous that the joinder of all members is impracticable. The answer to this question in this case must be "yes" since the purported class numbers over 300 without the inclusion of contract lessees and over 700 if they are included. It must be borne in mind in this regard that at this stage the Court is not looking to the question of what number of persons possess valid claims, but rather to the question of what number of persons fit within the criteria outlined above and are likely to make claims, without considering whether or not those claims are likely to succeed.

## ADEQUATE PROTECTION OF INTERESTS

Subsection 4 of Rule 23(a) specifies that in order for an action to proceed as a class action, the representative party must "fairly and adequately protect the interests of the class." In this case, plaintiff counsel pledges to protect the interest of all members of the class and to pursue the claims of all members of the class with vigor. Defendant states in reply that plaintiff's counsel's pledge is sufficient to satisfy the requirement of Rule 23(a)(4), and indeed it is as long as the Court is satisfied, as it is, that plaintiff's counsel's character and competence are such as to permit him to adequately represent the interests of all class members without significant conflicts of interest.

## SUPERIORITY

The third requisite for the finding of a class is found in the second portion of Rule 23(b)(3), which requires the Court to find that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In Katz v. Carte Blanche Corporation, 496 F.2d 747

(3rd Cir. 1974), the Third Circuit Court of Appeals for the United States recently set forth further guidelines to be followed in deciding the superiority question:

"The superiority finding requires at a minimum (1) an informed consideration of alternative available methods of adjudication of each issue, (2) a comparison of the fairness to all whose interests may be involved between such alternative methods and a class action, and (3) a comparison of the efficiency of adjudication of each method. . . . [A]ll Rule 23(b)(3) superiority determinations [must] take into account several different interests. Superiority must be looked at from the point of view 1) of the judicial system, 2) of the potential class members, 3) of the present plaintiff, 4) of the attorneys for the litigants, 5) of the public at large and 6) of the defendant. The listing is not necessarily in order of importance of their respective interests. Superiority must also be looked at from the point of view of the issues." 496 F.2d at 757 and 760.

There are two possible alternatives to a class action: 1) a test case, and 2) an action by named plaintiffs only with a liberal right of intervention for those similarly interested and its variant, a multiplicity of individual suits by those persons who would otherwise be found to be class members.

The test case approach, although found to be appropriate in *Katz*, is neither appropriate nor superior in this instance. After an extensive discussion of the issues and considerations involved during the conference with the Court on April 17, 1974, counsel for plaintiffs and defendant agreed that a test case would not be desirable in this instance and the parties stipulated on the record that this case should not proceed as a test case, but that instead a determination should be made as to whether or not a proper class or classes exist.

The second possible alternative to a class action is also neither appropriate nor superior in this instance. To allow this action to proceed as an action by named plaintiffs with a right of intervention to other persons similarly situated, increases the risk that a significant number of persons similarly situated could either not be informed of the pendency of this case or through misunderstanding or misapprehension of the issues otherwise fail to intervene as parties plaintiff. Such a situation would be unsatisfactory to all concerned, for such persons would not have their rights adjudicated and defendant would be left in the open-ended position where further litigation was always possible whether or not he won on the merits of his case.

Given the stance of the parties and upon consideration of all the issues involved, I find that a class action is superior to all other alternative means of trying this case.

## COMMONALITY, TYPICALITY AND PREDOMINANCE

Under this heading the most important considerations pertinent to the certification of a class will be discussed. These are the prerequisite of Rule 23(a)(2) that there must be "questions of law or fact common to the class," the prerequisite of Rule 23(a)(3) that the claims or defenses of the representative parties be "typical of the claims or defenses of the class," and, since if there is to be a class in this case it shall be a class under Rule 23(b)(3), the prerequisite of that subsection that the questions of law or fact referred to in subsection (a)(2) "predominate over any questions affecting only individual members." As I stated in Katz v. Carte Blanche Corporation, 52 F.R.D. 510 (W.D.Pa.1971):

"The requirement of typicality contemplates that the claims of the nomi-

nal plaintiff be representative of those of the members of the class whom he purports to represent and that he not have interests which are in conflict with or inimical to those of other members." 52 F.R.D. at 515.

The Third Circuit further substantiated the considerations relevant to this question in considering the *Katz* case upon appeal when they said:

"The predominance finding requires at a minimum the identification of the legal and factual issues, common and diverse, and an identification of the class members to which those relate. We must determine whether the district court has properly identified the factual or legal issues, and has properly identified those which are common. 496 F.2d at 756.

In line with the Third Circuit's instructions in Katz, I have undertaken an analysis of both the parties and issues in this case. Such an analysis has been condensed into Court Exhibit A, appended hereto, a modification and expansion of defendant's exhibit A submitted to this Court. Court Exhibit A sets out the 18 primary issues involved in this case, identifying them both by means of number and a short description and juxtaposes this information against information gleaned from the depositions of class representatives and certain members of the purported class. Where a class representative or class member referred specifically to an issue in his deposition, that reference is marked by an "X" in the line across from that for that specific issue.

Such an analysis has been possible because the parties have deposed both the class representatives and certain persons who have come forward and stated that they desire to be members of the purported class in this action. The chart, of course, is not complete in the sense of covering every possible contention of every possible party to this action simply because at this stage of the proceeding it is impossible to know what individuals will wish to be members of the alleged class. It is obvious that a complete correlation of parties and issues would be impossible in any instance since at the class certification stage of the proceeding it is rarely, if ever, possible to have identified, let alone contacted, each and every person who would fall within the criteria for being a class member and at the same time wish to become a class member. Nevertheless, given the information at hand, it is believed that Court Exhibit A constitutes the correlation of issues and parties mandated by the Third Circuit in Katz v. Carte Blanche, *supra*.

■ The above chart demonstrates that in this action, Rule 23's requirements of commonality, typicality and predominance are satisfied. In order to meet these requirements, it is not necessary, as defendant contends, for each and every issue to have been raised by each and every member of the class or class representatives. Rather, it is only necessary that each issue be raised by at least one class representative or, failing that, at least one class member. Court Exhibit A indicates that the latter situation clearly pertains here. The operative assumption here is that as long as the class representative satisfies standing requirements, his raising of any particular issue is sufficient since class members lurk in the background, having not yet come before the Court, ready to join the class representative as to that particular issue in his argument.

In sum, the common question of law and fact in this, and presumably in any other civil treble damage action, is whether or not defendant did or did not engage in acts illegal under the antitrust laws; specifically, whether or not defendant was party to a conspiracy to monopolize, an attempt to monopolize, or price discrimination. These common questions of law and fact are raised equally by all members of the class.

Assuming that it is found that defendant did so conspire, discriminate or attempt to monopolize, the next question then is which of the parties plaintiff was injured by defendant's actions and to what extent. It is upon this that many a court has had difficult problems with the question of class certification.

In Shaw v. Mobil Oil Corporation, 60 F.R.D. 566 (D.N.H.1973) it is said:

> "The proof of impact (fact of injury), the second prerequisite to recovery in private antitrust cases, will necessarily be different for each member. Such proof would depend on proximity to the company-owned station, other changes which may have occurred in the areas, and a number of other factors which, while possibly common among many of the members, would require a separate factual showing for each.
>
> Furthermore, it is undisputed that the issue of damages is peculiarly individual and not susceptible of class determination." 60 F.R.D. at 568–569.

So also in Lah v. Shell Oil Company, 50 F.R.D. 198 (S.D.Ohio 1970) it is said:

> "[W]hether Shell compelled each individual to sign a lease for the duration of a year. That is a question of fact; or, with respect to 140 dealers, it is not one question, but 140 separate questions of fact. Individual inquiry would be required." 50 F.R.D. at 200.

Ralston v. Volkswagenwerk, A.G., 61 A.R.D. 427 (W.D.Mo.1973) and Bogosian v. Gulf Oil Corporation, 62 F.R.D. 124 (E.D.Pa.1973), also exemplify such thinking.

■ It appears to me that these solutions overlook the utility of the vehicle written into Rule 23 for handling just such a contingency. Rule 23 provides that an action may be maintained as a class action as to a particular issue only. As stated in the Advisory Committee Note to Rule 23 "the action may retain its 'class' character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amount of their respective claims." 39 F.R.D. 69, 106 (1966). Short of noting that I have utilized the procedure of decertifying a class as to damages in a recent case, Samuel et al. v. University of Pittsburgh, 375 F.Supp. 1119 (W.D.Pa.1974), I mean to infer nothing as to the likelihood of utilizing such a procedure here. My only point is that conceptually, the Court need only look to whether each and every factual and legal issue in a purported class action is raised by class representatives in order to determine the propriety of class certification, as long as the option of decertification of the class as to damages is open to it.

■ Court Exhibit A demonstrates that each of the three major and 18 particular issues in this case satisfies the requisites of commonality, typicality and predominance. However, plaintiff's amended and consolidated complaint also raises these issues as to persons who are presently contract lessees of defendant ARCO. Since no person who is a named plaintiff in either Herrmann I or Herrmann II is presently a contract dealer of defendant ARCO this issue cannot be raised at this time, there being no proper class representative. The requirements of Rule 23 having been satisfied, as to lessee dealers of ARCO between October 29, 1967 and December 19, 1972, but not thereafter, and lessee dealers as of December 20, 1972 who opted out of the Merola class settlement, the Rule 23(b) class will be certified as to those two sub-groups alone. However, plaintiff will be granted leave to amend his complaint so as to name a class representative who is a contract dealer of defendant ARCO, should such a person come forward. An appropriate order in accordance with this opinion will be entered.

See Appendix on next page.

APPENDIX
COURT EXHIBIT "A"

| | Class Representatives | | | | Members of Alleged Class | | | |
|---|---|---|---|---|---|---|---|---|
| | Hermann | Oskin | Molnar | Homer | Emro | Kohser | Miklavic | Weiss |
| 1. TBA Conspiracy | X | X | X | X | X | X | X | X |
| 2. TBA Restraint | X | X | | | | | | |
| 3. Lease Renewal | X | X | X | | | | | X |
| 4. Product Withheld | | X | | | | | | |
| 5. Price Fixing (sale) | X | X | | | | | | X |
| 6. Restraint-pricing | X | X | | | | | | X |
| 7. TBA Withdrawal | X | | X | X | | | | |
| 8. Price Zones | | X | X | | | | | |
| 9. Other Assistance | X | X | | | | | | X |
| 10. Lease Misrepresentation | X | X | | | | | | X |
| 11. Damage | X | X | X | X | X | X | X | X |
| 12 Business Hours | X | | X | X | X | | | X |
| 13 Trading Stamps | X | X | X | X | | | | X |
| 14. Other Promotions | X | X | X | X | | | | X |
| 15. Price Discrimination | X | X | X | X | | X | | |
| 16. Location | X | X | X | X | | X | | X |
| 17. Conspiracy | X | X | X | X | X | X | X | X |
| 18. Injury | X | X | X | X | X | X | X | X |