Richard D. AUSTIN, Plaintiff-Appellant,

v.

The HOUSE OF VISION, INC., a corporation, et al., Defendants-Appellees.

No. 16864.

United States Court of Appeals
Seventh Circuit.

Dec. 4, 1968.

Rehearing Denied Jan. 9, 1969.

Leonard Rose, Mason, Albright, Stansbury & Rose, Chicago, Ill., for plaintiff-appellant.

Lawrence West, Leo Spira, Chicago, Ill., for defendants-appellees.

Before CASTLE, Chief Judge, and HASTINGS and FAIRCHILD, Circuit Judges.

HASTINGS, Circuit Judge.

This matter is before us on appeal for the second time. In Austin v. House of Vision, Inc., 7 Cir., 385 F.2d 171 (1967), plaintiff Austin appealed from the dismissal of his amended complaint and the denial of his motion for leave to file a second amended complaint. We concluded that plaintiff should be afforded an opportunity to further amend his complaint. Accordingly, we vacated the judgment of dismissal and remanded for this stated purpose.

On remand, the district court granted such leave and plaintiff filed his second amended complaint. On consideration thereof, the trial court granted defendants' motion to dismiss and the second

amended complaint was dismissed. Plaintiff appealed.

Plaintiff on this appeal assumes that by dictum in our prior opinion we decided and fully disposed of the issues now before us on this second appeal. In disposing of the first appeal, we were concerned only with plaintiff's right to file a further amended complaint. Anything we stated in our opinion prior to our holding merely pointed in that direction. In 385 F.2d 171, supra, at 172, we expressly stated:

"Whether such an amended complaint will state a cause of action cannot be determined unless and until such an amended complaint is filed and tested."

Further, we said:

"In view of our disposition of this appeal, we need not now decide the question of whether the present amended complaint sufficiently states a claim under the federal antitrust laws.

"We think the issues here involved may be more thoroughly considered if plaintiff is granted leave to further amend his complaint."

Plaintiff appropriately characterizes his claim as presenting a "novel theory of private antitrust law" and that his "allegations may create a first impression of novelty".

■ Plaintiff brings this action for treble damages pursuant to Title 15, U.S.C.A. § 15, allegedly resulting from defendants' conspiracy to reduce competition in the retail optical industry.

Plaintiff has been an optical technician and dispenser of optical lenses, according to prescription, to the public in the general metropolitan area of Cook County (Chicago), Illinois since about 1941.

Defendant The House of Vision, Inc. (defendant), a corporation, is engaged in the optical business in a number of states, with its principal office in Chicago, Illinois and has about 15 places of business in the Chicago area.

The five named individual defendants are the trustees of the House of Vision Employees' Benefit Trust (Trust), a defendant company sponsored employee benefit trust.

Plaintiff was employed by defendant about March, 1956. He worked continuously for defendant as a technician and a dispenser until June 15, 1966, when he *voluntarily terminated* his employment relationship with defendant. No written employment contract had ever existed between the parties.

Five days later, June 20, 1966, plaintiff was employed in the same capacity by Uhlemann Custom Opticians, Inc., a competitor of defendant, in its store (office) in Evanston, Illinois, just around the corner from one of defendant's stores where plaintiff had formerly worked for about eight years.

While an employee of defendant, plaintiff participated in the Trust. Under the terms of the Trust agreement employee contributions thereto were supplemented by contributions by the employer. Each party made such contributions during the period of plaintiff's employment.

The Trust was established November 15, 1938, and was amended thereafter from time to time, and has for its primary purpose the exclusive benefit of the employees. The Trust sets forth a profit-sharing plan for the participating employees. Participation in the Trust is entirely voluntary.

The Trust provides generally in Section 8(d) that a participant, who resigns his employment subsequent to his fourth year of participation, shall be paid by the trustees the total of his contributions to the Trust (less certain charges for hospital and insurance benefits), plus the amount of his vested interest in the balance of the trust (set out in the plan), in addition to his interest in his own contributions (in which his interest was fully vested).

However, the Trust provides in Section 8(h) that if one of defendant's participating employees leaves its employ and accepts a position with one of defendant's direct competitors, then such employee shall be paid *"only the aggregate of his own contributions to the Trust"*, plus interest, less charges for prior benefits paid. In short, such an employee loses any vested interest in *company contributions*. We are advised that this is a common provision in employee profit-sharing pension plans.

It is clear and undisputed that five days after plaintiff voluntarily quit his job with defendant on June 15, 1966, he accepted a similar position with one of defendant's direct competitors. As a result, plaintiff was notified, as provided by the Trust, that his rights in the House of Vision Employees' Benefit Trust, *beyond his own contributions,* had been forfeited.

We have tried, as best we can, to pierce the rather nebulous conclusory allegations of plaintiff's second amended complaint to determine whether there is some rational basis on which it may be said that a claim for which relief can be granted under federal antitrust laws has been stated. We have been unable to do so.

As we read the allegations of the second amended complaint, the following seems clear. Plaintiff was not coerced or compelled in any manner to terminate his employment by defendant. He had no employment contract. He quit voluntarily in order to work for a competitor in a nearby store.

He was a participant in the Trust by his own election. The Trust appears to be a profit-sharing arrangement for the benefit of defendant's personnel. It has none of the characteristics of a deferred compensation plan, as plaintiff chooses to call it. Defendant's voluntary contributions to the plan do not constitute deferred compensation. It is a contract entered into by the employees on the one hand and corporate representatives of defendant as trustees on the other. Its provisions are clear and un-

ambiguous and readily understandable. If plaintiff was not accorded his rights under the terms of the Trust agreement, he could have brought a proper action on the contract.

We find no showing of any *per se* violation of the antitrust laws. There is no charge of price fixing, division of markets, group boycotts or tying arrangements. We find no showing of injury to the public or to the plaintiff. Plaintiff has been fully able to compete as evidenced by his freedom of choice in immediately obtaining similar employment with a competitor in the same neighborhood. There is no complaint by a business competitor that it was unable to hire optical employees as a result of any practice engaged in by defendant.

Plaintiff apparently contends that the use of the Trust was a device by which defendant, through its trustees, conspired in an attempt to monopolize the availability of optical industry employees, and that somehow the termination of his rights in the Trust was an act in furtherance of this conspiracy to monopolize.

It is not clear how there could have been an actionable conspiracy by the trustees of the Fund; their duties were limited to the administration of the fund pursuant to its written provisions. The trustees, as such, were not engaged in the optical business and much less were not competitors of defendant. There was no allegation of conspiracy in restraint of trade among *competitors,* the proscription of which is contemplated by Section 1 of the Sherman Act.

Plaintiff has been accorded every opportunity to state his alleged claim. He did not seek to further amend his second amended complaint.

■ We are compelled to the conclusion that even under the liberal interpretation of the Federal Rules of Civil Procedure, 28 U.S.C.A., as initially set out in Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), and as applied to § 1 of the Sherman Act, 15 U.S.C.A., in an action brought under § 4 of the Clayton Act, 15 U.S.C.A. §

15, in Radiant Burners, Inc. v. Peoples Gas Co., 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961), plaintiff has failed to state a claim cognizable under the federal antitrust laws.

We have considered the many arguments advanced by plaintiff and are not persuaded.

In passing, however, we note plaintiff's claim of prejudicial error in the denial of his petition for a change of venue. The scholarly district judge, Honorable Hubert L. Will, after the remand on the prior appeal, was charged by plaintiff with having a predisposition "to decide any possible amended complaint in favor of defendants so long as a private antitrust action is claimed" and that this clearly amounted to prejudice against plaintiff "with respect to his cause of action and in favor of Defendants."

On brief, plaintiff says that "because of the trial judge's philosophical perspective" he is prevented "from making unbiased rulings of law on the subject and because his perspective may prevent plaintiff from presenting his case in a fair atmosphere under the circumstances," the change of venue is necessary. He adds "that the trial judge is not deliberately biased, but rather that he is biased by his experience and philosophy of law in an area which is rapidly changing."

The presiding trial judge is fully capable of understanding problems of antitrust law. In the instant case he merely decided that plaintiff's "novel theory" did not require judicial acceptance. He exhibited no bias toward plaintiff but simply disagreed with plaintiff's legal contentions. There was no error in denying the change of venue.

We do not reach or pass upon any question concerning the statute of limitations in this appeal.

For the foregoing reasons, the judgment of the district court dismissing plaintiff's second amended complaint is affirmed.

Affirmed.