**Frank MASTANDREA, Plaintiff,**

v.

**GURRENTZ INTERNATIONAL COR-PORATION, Defendant.**

**Stuart J. NORD, Plaintiff,**

v.

**GURRENTZ INTERNATIONAL CORPO-RATION, Defendant.**

**Civ. A. Nos. 74–553, 74–554.**

United States District Court,
W. D. Pennsylvania.

Nov. 21, 1974.

Harry J. Gruener, Litman, Litman, Harris & Specter, P.A., Pittsburgh, Pa. for plaintiffs.

C. Arthur Wilson, Jr., Robert J. Tate, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for defendant.

## OPINION

TEITELBAUM, District Judge.

The above-captioned cases are before the Court on defendant's motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss this action for failure to state a claim upon which relief can be granted. It is sometimes stated that the motion to dismiss for failure to state a claim is viewed judicially with disfavor and is rarely granted. Gillibeau v. City of Richmond, 417 F.2d 426 (9th Cir. 1969). But such a statement should not be taken to mean that a 12(b)(6) motion should *never* be granted. The question in such a circumstance is whether, in the light most favorable to plaintiff, with every doubt and factual inference resolved in plaintiff's favor, the complaint states any valid claim for relief. Wright & Miller, Federal Practice & Procedure, § 1357 at p. 601. If the allegations in the complaint, taken as true, do not effectively state a claim, the added assertion by plaintiff that they do state a claim will not save the complaint. Nor can plaintiff bootstrap his action into a law suit of greater length and cost by merely contending that there are facts known to him, though unbeknownst to the Court and the opposing party upon which a claim might conceivably be stated. The above-captioned cases present such a situation.

Both of these cases are based upon the establishment, as of May 1, 1963, by defendant Gurrentz International of a profit-sharing plan for its employees. Both plaintiffs, whose individual cases have been consolidated for all purposes by stipulation of the parties, were employees of the defendant company. By its terms, the profit-sharing plan in issue was a non-contributory plan pursuant to which defendant corporation was to contribute monies from its net profits and/or its accumulated earnings and profits into a fund for the benefit of the employees eligible to participate and their designated beneficiaries. Under the express terms of the plan, an employee had no vested right as beneficiary until he or she had completed eleven (11) years of participation in the plan. After eleven (11) years of employment, an employee would commence to accumulate vesting at the rate of 10% a year until the completion of nineteen (19) years, at which point the employee would be fully vested.

As alleged in the complaints, the employment of both plaintiffs terminated in December of 1972, so that by the terms of the plan neither plaintiff had acquired any vested right to profit-sharing at the time of his termination. Both complaints allege that defendant's purpose in implementing the plan with a vesting requirement incorporated was to impose a restriction upon plaintiffs' freedom to seek other employment. Therefore, plaintiffs conclude that the plan constituted an unlawful restraint of trade under the antitrust laws of the United States. On this theory, plaintiffs have instituted these actions as private treble damage suits to recover three times the amount of monies allegedly contributed to the plan for their benefit as well as attorneys' fees and costs of suit.

In addition to the essentially undisputed factual allegations upon which they base their complaint, which are set out in the paragraphs above, plaintiffs make two additional factual allegations. Because these cases are before the Court at an early stage of the pleadings, these allegations are, of course, unsupported by confirmatory data. Nevertheless, they shall be accepted as true in accordance with the general rule of F.R.Civ.P. 12(b)(6) that all well-pleaded

material allegations in the complaint are considered to be true and admitted for purposes of the motion. Miller v. Parsons, 313 F.Supp. 1150 (M.D.Pa.1970). These additional allegations are: 1) that plaintiffs were told that participation in the plan was mandatory and that if they failed to participate they would have their employment terminated; and 2) that the plan was not non-contributory as represented, but that rather all contributions to the plan were made by defendant's salesmen from their sales commissions. Thus, plaintiffs argue that the plan was coercive in nature. They argue that the plan had the effect of unreasonably restraining their ability to seek other employment by reason of its forfeiture penalty upon termination; that is, when plaintiffs terminated their employment with defendant the amounts that they had supposedly contributed to the plan were not returned to them.

Neither complaint sets forth any specific provision of the antitrust laws which is alleged to have been violated by defendant in instituting the profit-sharing plan as to the plaintiffs or, indeed, in general. Instead, the complaints simply allege generally that defendant's conduct was in violation of the antitrust laws of the United States. After undertaking as broad a survey of said antitrust laws as is warranted by plaintiffs' open-ended approach, in accordance with the liberality of construction which is plaintiffs' due in the consideration of such a motion, this Court is unable to discern any section or portion of the United States' antitrust laws which could conceivably have been violated by the actions complained of. For that reason, complaints will be dismissed for failure to state a claim upon which relief can be granted.

Considering these cases, I have borne in mind the subtle distinction set out at Wright & Miller, 5 Federal Practice & Procedure, § 1357, pp. 603–604:

"The Court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions. In any event, the motion for summary judgment provides a more expeditious and effective procedure for quickly terminating an action that does not appear to merit relief on its substantive merits.

As a practical matter, the dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." (footnotes omitted)

The facts of this novel case present just such an "insuperable bar to relief."

It is axiomatic to the law of trade regulation that there can be no conspiracy between a corporation and its employees. Noerr Motor Freight, Inc. v. Eastern R. R. Presidents Conf., 273 F.2d 218 (3rd Cir. 1959) rev'd on other grounds 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464, rehearing den. 365 U.S. 875, 81 S.Ct. 899, 5 L.Ed.2d 864 (1961); Goldlawr, Inc. v. Shubert, 169 F.Supp. 677 (E.D.Pa.1958). As stated in Nelson Radio and Supply Company v. Motorola, Inc., 200 F.2d 911 (5th Cir. 1952), cert. denied, 345 U.S. 925, 73 S.Ct. 783, 97 L. Ed. 1356 (1953):

"It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any-more than a private individual can . . .. It is true that the acts of the corporate officers may bring a single corporation within section 2 of the Sherman Act, which covers an attempt to monopolize, but this is not because there exists in such circumstances a conspiracy to which the corporation is a party. And of course a corporation and its subsidiaries can be guilty of a conspiracy in restraint of trade but that involves separate

corporate entities. In the instant case we do not have any of those situations and it appears plain to us that the conspiracy upon which plaintiff relies consists simply in the absurd assertion that the defendant, through its officers and agents, conspired with itself to restrain its trade in its own products." *Id.* 200 F.2d at 914.

Stated another way, in order for a conspiracy to exist within the meaning of the antitrust laws, it must be alleged that there was a conspiracy *between competitors.* In Graham v. Hudgins, Thompson, Ball & Associates, Inc., 319 F.Supp. 1335 (N.D.Okl.1970), an employee brought suit against his employer and the administrator of a non-contributory profit-sharing plan which contained the provision that should an employee leave the employer to accept employment with a competitor, the employee's rights in the plan would be forfeited. The district court dismissed plaintiff's action, holding that the complaint failed to state a claim arising under the Sherman Antitrust Act. The court noted that plaintiff's complaint did not allege any of the traditional *per se* violations of Sherman Act, § 1, 15 U.S.C. § 1, that is, it did not allege the existence of price fixing, tying arrangements, boycotts, division of markets or reciprocal dealings. It also noted that the "plurality of actors" requirement of the "contract, combination or conspiracy" provisions of Sherman Act, § 1 had not been asserted. The Court then went on to say:

"[P]laintiff argues that at the very least, the disputed forfeiture provision of the Plan constitutes a covenant not to compete, the reasonableness of which must be reviewed by this Court in a trial on the merits. Covenants not to compete are traditionally a type of restraint which may be found reasonable or unreasonable under the circumstances of the particular case. See United States v. Addyston Pipe and Steel Company, [85 F. 271 at page 281 (6th Cir. 1898), mod. and aff'd] 175 U.S. 211 [20 S.Ct. 96, 44 L.Ed. 136]. However, in order to review the reasonableness of a restraint, there must first exist restraint and none seems to appear among Plaintiff's allegations. The trade alleged to be affected is the market which exists for plaintiff's services. However, the only restraint that appears to be imposed upon Plaintiff is that of his desire for payment of his inchoate share of the funds of the Plan. Plaintiff makes no claim that this forfeiture provision coerces any prospective employer into not hiring him. There is nothing in the Complaint to indicate that prospective employers are discouraged in any way from competing for Plaintiff's services. The Court is unable to perceive how Plaintiff's failure to receive certain claimed benefits from his former employer restrains others from competing for his services. . . . Inasmuch as no Federal claim is presented by Plaintiff, the Court should dismiss his Complaint upon jurisdictional grounds." *Id.* at 1337–1338.

In Austin v. House of Vision, Inc., 404 F.2d 401 (7th Cir. 1969) another similar action was also dismissed for failure to state a claim cognizable under the federal antitrust law. In *Austin*, plaintiff, a former employee of defendant company, charged that the provision of his employer's benefit trust plan which provided for forfeiture of all rights beyond his own contributions to the plan upon his acceptance of a position with a competitor was a device by which the employer conspired to monopolize the availability of optical employees. The Court stated:

"We have tried, as best we can, to pierce the rather nebulous conclusory allegations of plaintiff's second amended complaint to determine whether there is some rational basis on which it may be said that a claim for which relief can be granted under

federal antitrust laws has been stated. We have been unable to do so." *Id.* at 403.

The *Austin* Court went on to say:

"We find no showing of any *per se* violation of the antitrust laws. . . [w]e find no showing of injury to the public or to the plaintiff. Plaintiff has been fully able to compete as evidenced by his freedom of choice in immediately obtaining similar employment with a competitor in the same neighborhood. There is no complaint by a business competitor that it was unable to hire optical employees as a result of any practice engaged in by defendant."

On the basis of the holdings of the *Austin* and *Graham* cases, that is, because there is no *per se* violation of the antitrust laws alleged, and because there is no conspiracy alleged between competitors, plaintiffs' complaints will be dismissed. Nor can there be here a violation of Sherman Act, § 2 (15 U.S.C. § 2) which prohibits an attempt to monopolize because there is no area of trade, no field of competition, which defendant could conceivably have set out to monopolize under the facts of this case. Along the same lines, even if plaintiffs were coerced in some unarticulated way, such coercion was not in restraint of trade and could not be actionable under the antitrust laws.

This complaint boils down to the assertion that where a profit-sharing plan is contributory in nature, an employee is entitled to get back the money he has contributed upon termination of his employment. The possibility of coercion constitutes an added fillip to plaintiffs' assertions. Plaintiffs may or may not be entitled to the return of their funds, depending upon whether or not the plan was in fact non-contributory, as it appears to have been according to its unambiguous terms. But even if plaintiffs are entitled to the return of the monies they have allegedly contributed, defendant's failure to return such sums

is under no stretch of the imagination a violation of federal antitrust laws. Whether or not such failure to return the funds can conceivably constitute a violation of any other law, state or federal, is not for this Court to say. On a Rule 12(b)(6) motion the Court may be required to accept plaintiffs' allegations as true, no matter how incongruous, but it is not required to supply plaintiff with an alternative legal theory upon which he may proceed. For their part, plaintiffs have committed themselves only to saying that the condition complained of was "a violation of antitrust law." This is at best a hesitant and extremely open-ended commitment, so imprecise as to be practically meaningless. Under no construction of the facts of this case can the conditions complained of constitute a violation of Federal Antitrust Law for the fundamental and inescapable reasons stated above.

An appropriate Order in accordance with this Opinion will be entered.