**R.C. DICK GEOTHERMAL CORPORATION, Plaintiff,**

v.

**THERMOGENICS, INC., a corporation, Pacific Energy Corporation, a corporation, Resources Investment Company, a corporation, Hughes Aircraft Company (Inc.), a corporation, Callon Petroleum Company, a corporation, Geothermal Resources International Inc., a corporation, L.A. Hyland, Robert S. Reed and John S. Callon, Defendants and related counterclaims.**

No. C–79–3814 EFL.

United States District Court, N.D. California.

June 16, 1983.

Allan N. Littman, Bruce A. Ericson, Pillsbury, Madison & Sutro, San Francisco, Cal., for plaintiff.

James L. Hunt, Donn P. Pickett, Randall J. Litteneker, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for defendants Thermogenics, Inc., Hughes Aircraft and Robert S. Reed.

George A. Manfredi, Andrew S. Rotter, Johnson, Manfredi & Thorpe, Los Angeles, Cal., for defendant Geothermal Resources Intern., Inc.

Stephen A. Million, Brobeck, Phleger & Harrison, San Francisco, Cal., for defendants Pacific Energy Corp. and John S. Callon.

## ORDER

LYNCH, District Judge.

This order discusses defendants' motion for summary judgment regarding plaintiff's claims of antitrust violations only. As will be more fully discussed, plaintiff's motion for partial summary judgment will be decided at a later time if it remains relevant. Upon review of the voluminous materials filed in this case and the argument of counsel, this Court grants defendants' motion in part and denies the motion in part.

The Court finds that, as a matter of law, plaintiff cannot establish a *per se* violation of section 1 of the Sherman Act. The issue of whether defendants' conduct violates section 1 under the rule of reason analysis is severed for prompt trial by this Court. The outcome of the trial on this sole issue will then determine whether the conspiracy and section 2 allegations will be tried. The Court has set a status conference for Tuesday, June 21, 1983 at 9:15 a.m. so that a date can be set for the trial of this severed issue.

The case concerns a factual situation involving a complicated relationship among the parties. Plaintiff is a corporation controlled by Ronald C. Dick (Dick). In 1964, Dick acquired a lease with an option to purchase 1,100 acres of land in Sonoma County. In 1979, plaintiff exercised its option to purchase the property and is now the sole owner.

The facts will be discussed more fully throughout the Order as they become relevant. At this point, it is sufficient to note that since 1966 five different entities have, through sublease or assignment, controlled the steam development of the property. All are named as defendants along with Hughes Aircraft Co. and three individuals.

At issue is plaintiff's private antitrust action seeking treble damages arising from an alleged conspiracy to suppress the production of geothermal steam on plaintiff's property.[1] Plaintiff contends that this alleged conspiracy effected the unit and total price of steam; the price for steam lands; and the competitive process for the exploration, development and production of steam on plaintiff's property, within one and one-half miles of plaintiff's property, and in the Geyser Area generally. Plaintiff further argues that the objectives of this alleged conspiracy were to effect the price of steam lands in the Geyser Area, to limit the development of steam on plaintiff's property in an attempt to gain control of production in the Area and to force plaintiff to sell his land at substantially below its true market value.

Plaintiff contends that its numerous allegations set forth an unreasonable restraint of trade in violation of section 1 of the Sherman Act. Plaintiff further argues that this same conduct constitutes monopolization, an attempt to monopolize, and a conspiracy to monopolize, in violation of section 2 of the Sherman Act.

*Summary Judgment*

■ It is axiomatic that summary judgment should be used sparingly in antitrust cases. *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F.2d 665, 668 (9th Cir.1980). Summary judgment, however, does have a place in antitrust litigation and, if the moving party meets its burden, the opposing party cannot defeat a summary judgment motion without significant probative evidence supporting the complaint. *Mutual Fund Investors, Inc. v. Putnam Management Co., Inc.,* 553 F.2d 620, 624 (9th Cir.1977). *See also Ron Tonkin Gran Turismo v. Fiat Distributors,* 637 F.2d 1376, 1381 (9th Cir.), *cert. denied,* 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 109 (1981). As this circuit has explained,

To hold otherwise would give free rein to any plaintiff who can draft an antitrust complaint capable of withstanding a motion to dismiss to go to trial with only a wing and a prayer supporting his well drafted complaint.

*Mutual Fund, supra,* 553 F.2d at 624.

It is within this context that this Court evaluates plaintiff's antitrust allegations and defendants' summary judgment motion thereto.

SECTION ONE

*Per Se*

■ Through experience it has been shown "that there are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue . . . [can be] conclusively presumed to be unreasonable and therefore illegal. . . ." *Northern Pacific Railway Co. v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). Such limited situations are deemed to constitute *per se* violations of the Sherman Act; once the conduct is proved, an anticompetitive effect on competition is presumed. *Ron Tonkin, supra,* 637 F.2d at 1387; *see United States v. National Ass'n of Broadcasters,* 536 F.Supp. 149, 155 (D.D.C.1982).

Plaintiff contends that the *per se* rule should be applied in this case alleging refusal to deal, limitation of production and price-fixing.

■ This Court believes that the *per se* rule cannot be applied properly in this case. Plaintiff's allegations do not fit into any recognized *per se* category. *See Gough v. Rossmoor Corp.,* 585 F.2d 381, 386 (9th Cir. 1978), *cert. denied,* 440 U.S. 936, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979). This Court would be required to expand and ·contort the *per se* rule for it to be applied in this case where the existence of a pernicious effect on competition is, at best, open to dispute. The Supreme Court has counselled against liberally expanding the several recognized categories noting that "departure from the rule-of-reason standard must be

---

**1.** Plaintiff acknowledges that steam is being produced and sold on its property, but contends that it is not developed to its full capacity.

based upon demonstrable economic effect rather than . . . upon formalistic line drawing." *Continental T.V., Inc. v. G.T.E. Sylvania, Inc.,* 433 U.S. 36, 58–59, 97 S.Ct. 2549, 2561–2562, 53 L.Ed.2d 568 (1977). *See also Gough, supra,* 585 F.2d at 388. Accordingly, application of the *per se* rule is only proper where "the challenged conduct had, or was likely to have, a pernicious effect on competition or lacked any redeeming virtue." *Ron Tonkin, supra,* 637 F.2d at 1388. The Court finds that this is clearly not the situation in the instant case.

### Refusal to Deal

Plaintiff alleges that it has been boycotted because defendants have prevented production of steam by defendants, plaintiff or anyone else and because defendants have made it difficult for plaintiff to acquire or develop any other property in the Geyser Area. Plaintiff further contends that "a concerted limitation of production is simply a form of boycott" (Plaintiff's Response to the Court's Request of September 15, 1981, p. 3), thus constituting a *per se* violation of section 1.

■ While certain predominantly horizontal boycotts are treated as *per se* violations of section 1 (*see, e.g., Com-tel, Inc. v. Dukane Corp.,* 669 F.2d 404, 409 (6th Cir. 1982)), this instant situation differs since it entails a predominantly vertical relationship. Although two defendants have an interest in the adjoining Filley property, most of the defendants are connected to plaintiff through a vertical title chain to Dick's land. Where a relationship is predominantly vertical, rule of reason analysis is proper. *Ron Tonkin, supra,* 637 F.2d at 1383 (citing *Oreck Corporation v. Whirlpool Corp.,* 579 F.2d 126, 131 (2d Cir.) (en banc), *cert. denied,* 439 U.S. 946, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978)).

■ Plaintiff's argument that *Klor's v. Broadway-Hale Stores, Inc.,* 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959), should control is not persuasive. The Court cannot say that the alleged boycott had by its " 'nature' and 'character' a 'monopolistic tendency.' " *Id.* at 213, 79 S.Ct. at 710. Further, the seemingly broad holding of *Klor's* has been criticized by this circuit. *Ron Tonkin, supra,* 637 F.2d at 1382–83. As that court noted,

The term 'group boycott' can be applied to divergent types of concerted activity, not all of which necessarily have a pernicious effect on competition or lack any redeeming virtue. The simple use of labels cannot suffice, because this would create the possibility that reasonable concerted activity would be proscribed.

*Id.* at 1383. Here, where plaintiff's claim is basically that defendants are not dealing *enough,* application of the *per se* rule should be avoided. Even though there may be a horizontal element to the boycott, a pernicious effect on competition cannot be presumed in this factual context.

### Limitation of Production and Price-Fixing

■ Plaintiff contends that defendants' alleged agreement to limit production constitutes in itself a *per se* section 1 violation. In essence, plaintiff is requesting this Court to form a new *per se* category, an action the Court refuses to take in light of the Supreme Court's admonition in *Continental T.V., Inc. v. G.T.E. Sylvania, Inc., supra,* 433 U.S. at 58, 97 S.Ct. at 2561. Plaintiff has cited no authority, nor has this Court found any such case, holding that a limitation of production in itself is a *per se* violation. The authorities cited by plaintiff all involve either price-fixing or horizontal market divisions, each a long-recognized *per se* category. *See, e.g., Plymouth Dealers Assoc. v. United States,* 279 F.2d 128, 129 (9th Cir. 1960).

Perhaps aware of the tenuous basis of this claim, plaintiff has attempted to allege price-fixing in conjunction with the limitation of production. Whether defendants have the power to effect price at all is a major issue to be determined in this case in the context of whether they can have an effect on competition. Clearly, plaintiffs' recent price-fixing allegations are too weak

to support a finding of a *per se* violation.[2]

Finally, to the extent that plaintiff contends that the alleged limitation of production underlies a group boycott claim, no *per se* violation is stated in this context for the reasons stated above.

There being no genuine issue of material fact, this Court grants partial summary judgment for defendants on the *per se* allegations.

*Rule of Reason*

 Finding that plaintiff's antitrust allegations fail to fit within any recognized *per se* category, the Court must employ the rule of reason standard requiring proof that the defendants' actions were unreasonable. The Ninth Circuit explained the rule of reason analysis as follows:

Proof that the defendant's activities had an impact upon competition in a relevant market is an absolutely essential element of the rule of reason case. It is the impact upon competitive conditions in a definable product market which distinguishes the antitrust violation from the ordinary business tort. As the Supreme Court has noted in another context, "... an antitrust policy divorced from market considerations would lack any objective benchmarks." *Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 53, n. 21 [97 S.Ct. 2549, 2559, n. 21, 53 L.Ed.2d 568] . . . .

Familiar principles guide our search of the record below for evidence of proof of market definition and competitive impact. Even if sufficient proof of intent and causation are introduced, the elimination of a single competitor, standing alone, does not prove anticompetitive effect. Impact upon the market must be proven by reference to definitions of both the relevant geographic market and the relevant product market.

*Kaplan v. Burroughs Corp.,* 611 F.2d 286 (9th Cir.1979), *cert. denied,* 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980). A valid section 1 violation must, therefore, be founded on proof of an adverse effect on competition. *A.H. Cox & Co. v. Star Machinery Co.,* 653 F.2d 1302, 1308 (9th Cir. 1981); *Mutual Fund, supra,* 553 F.2d at 627. Although plaintiff seems to argue otherwise, misreading the *Kaplan* court's use of the term "competitive conditions," it is only harm to *competition,* as opposed to harm to a single competitor, with which the Sherman Act is concerned. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977); *Mutual Fund, supra,* 553 F.2d at 267. Defendants contend that plaintiff has failed to make a showing that defendants' actions have adversely impaired competition for (and/or affected the price of) geothermal steam (or for geothermal steam lands[3]) in the relevant geographic market.

Although in some situations the Ninth Circuit has stated that either anticompetitive effect or purpose may support a section 1 violation (*see A.H. Cox, supra,* 653 F.2d at 1307; *Program Engineering v. Triangle Publications,* 634 F.2d 1188, 1195 (9th Cir. 1980)), generally

[t]he elements of a cause of action for an unreasonable restraint of trade under the rule of reason analysis of Sherman One are:

(1) An agreement among two or more persons or distinct business entities;

(2) Which is intended to harm or unreasonably restrain competition;

(3) And which actually causes injury to competition.

*Kaplan, supra,* 611 F.2d at 290. To ultimately prevail in this factual context plaintiff has to establish both the intent *and* the actual restraint on competition. This proc-

---

**2.** This Court acknowledges that an indirect effect on prices may be enough to trigger a *per se* price-fixing violation. *See General Cinema Corp. v. Buena Vista Distrib. Co.,* 532 F.Supp. 1244, 1257 (C.D.Cal.1982). Here, however, any effect on price (or competition), whether direct or indirect, is in question.

**3.** While it appears to this Court that plaintiff's action originally alleged a conspiracy to suppress the production of steam which impaired the price ("competitive processes") of steam, this Court will consider plaintiff's recent allegation of an effect on steam lands as well.

ess "involves a consideration of the impact of the restraint on the competitive conditions within the field of commerce in which the plaintiff was engaged and upon those commercially engaged in competition within it." *Gough, supra,* 585 F.2d at 389.

Whether defendants' alleged conspiracy has effected competition for steam or steam lands must be considered in the following factual context. In 1973, Pacific Gas & Electric Company (PG & E) agreed to build a 55-megawatt power plant (Unit 15) on plaintiff's property. PG & E contracted to buy and defendants agreed to sell geothermal steam produced on that property for the purpose of generating electricity. Unit 15 began operations in 1979, and is currently fueled by steam from both plaintiff's property and the adjoining Filley property. Since 1973 defendants Pacific Energy Corp. and Thermogenics, Inc. have been part of a joint venture exploring and developing the Filley property.

Among plaintiff's many allegations are claims that defendants are suppressing production of steam on the Dick property to benefit the Filley property; that the defendants have failed to develop the Dick property so that its value would be kept artificially low thereby driving plaintiff to sell the property below its market value; and that defendants have limited production in order to purchase surrounding steam lands.

Plaintiff argues that to prevail under rule of reason analysis it need only prove an effect on "competitive conditions" or "competitive processes," as opposed to an effect on price. The required rule of reason showing is an "effect on competition" and, semantic diversions aside, an effect on price is the most common means of proof. Plaintiff has the burden to state what anticompetitive effects it alleges. *Gough, supra,* 585 F.2d at 389.

The price paid for the steam produced on the Dick property is set by the PG & E contract. Therefore, it would appear that defendants would be unable to have an effect on the price of steam. Plaintiff, however, contends that if the Dick property were developed to its potential, more steam than PG & E would need would be produced. Therefore, plaintiff continues, the price of the steam could be altered through negotiations with other purchasers.

The Court seriously questions whether plaintiff can show any effect on competition. In a large measure, plaintiff's allegations most properly sound in tort. The Court acknowledges, however, that summary judgment is used even more sparingly where the rule of reason is the appropriate standard. *Ron Tonkin, supra,* 637 F.2d at 1388. As stated at the outset of this Order, the issue of whether defendants' actions impacted competition will be separately tried by this Court. If plaintiff prevails, the Court will hear the remaining antitrust issues—conspiracy, monopoly, attempted monopoly and conspiracy to monopolize. If defendants prevail, the antitrust claims of plaintiff will have failed and the pendent state claims will be remanded.

In allowing plaintiff to proceed to trial on the issue of whether defendants' acts violate section 1 under rule of reason analysis, the Court is not altering its previously-stated view that in order to prevail, plaintiff has the burden of showing defendants' actions have impacted competition. The Court rejects any intimation that *Blue Shield of Virginia v. McCready,* 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982) alters this requirement. Whether it be put as "effect on competition," "impact on competitive processes," or "impact on competitive conditions," the result is the same: plaintiff must prove that defendants' activities implicate the antitrust laws by rising beyond mere harm to a competitor.[4]

*Relevant Market*

■ To prevail, plaintiff must prove that the defendants' actions have unreasonably constrained competition in the relevant market. *Gough, supra,* 585 F.2d at 385. There is no dispute for this motion that the

---

4. The required proof is usually accomplished through expert witnesses. The Court, therefore, does not envision the trial of this severed issue requiring a great deal of time.

relevant product market is geothermal steam. The proper definition of the relevant geographic market, however, is hotly debated by the parties; plaintiff contending that the proper geographic market is plaintiff's property and a small surrounding area and defendants arguing that the market is the entire Geyser Area. This Court finds that, as a matter of law, the relevant geographic market is the Geyser Area.

Plaintiff bases its contention on the transportation limitation inherent in geothermal steam development. It appears that the steam cannot be transported farther than one and one-half to two miles.

While transportation costs or limitations may be to some degree relevant to the determination of what constitutes "the arena within which the strength of competitive forces is measured," (*Woods Exploration & Producing Co. v. Aluminum Co. of America*, 438 F.2d 1286, 1304 (5th Cir.1971), *cert. denied*, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972)), in the factual context of the instant case this "arena" is clearly the entire Geyser Area. The natural resource cases have uniformly included the entire resource field in their definition of the relevant market. *See, e.g., Woods, id.* at 1304; *Denver Petroleum Corp. v. Shell Oil Co.*, 306 F.Supp. 289, 304 (D.Colo.1969). Here the area of competition in the industry and where the purchaser looks for the product is the Geyser Area. *See Gough, supra*, 585 F.2d at 389.

Plaintiff contends that defendants' actions have affected the price of geothermal steam and the price of steam-producing lands. Such competitive impact, if any, is felt in the entire Geyser Area and cannot be limited to the small territory suggested by plaintiff. The decision of PG & E to build plants in certain locations is clearly based on the steam reserves found in the entire Geyser Area. As such, PG & E can look to the entire Geyser Area for plant locations and the fact that PG & E chose to place Unit 15 on plaintiff's property does not alter the result.

As the court pointed out in *Gough*, "in determining the relevant market the courts are not free to accept whatever market is suggested by the plaintiff as fitting most persuasively with his contention that his power to compete effectively has suffered injury." 585 F.2d at 389. Accordingly, the Court rejects plaintiff's proffered market definition and finds, as a matter of law, that the Geyser Area is the correct geographic relevant market.

## SECTION TWO

*Monopoly*

 Proof of monopolization requires proof that defendants possessed monopoly power in the relevant market and that this monopoly power was willfully acquired or maintained. *United States v. Grinnel Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966).[5] Monopoly power is the power to control prices or to exclude competition. *Grinnel, id.* at 571, 86 S.Ct. at 1704. It is agreed for purposes of this motion that the relevant product market is geothermal steam. As explained above, this Court finds that, as a matter of law, the relevant geographic market is the Geyser Area.

 Defendants argue, and this Court agrees, that defendants do not possess monopoly power in the Geyser Area. Defendants contend that they possess less than a seven percent market share. Plaintiff argues that this share is closer to 25 percent of Geyser lands. This Court finds from the evidence before it that, as a matter of law, defendants' market share is too small to infer monopoly power. *Dimmitt Agri Industries, Inc. v. CPC International, Inc.*, 679 F.2d 516, 529 (5th Cir.1982); *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 924–25 (9th Cir.1980); *Zoslaw v. CBS*, 533 F.Supp. 540, 554 (N.D.Cal.1980). Finding no monopoly power, it is unnecessary for the Court to discuss the second prong of the *Grinnel* test.

---

**5.** A third element of a § 2 monopolization claim may be "causal 'antitrust injury.'"

*Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 924 (9th Cir.1980).

**1112**

*Attempt and Conspiracy to Monopolize*

■ An attempt to monopolize claim requires proof of: (1) specific intent to control prices or destroy competition with respect to a part of commerce; (2) predatory or anticompetitive conduct directed to accomplishing unlawful purpose; and (3) a dangerous probability of success. *William Inglis & Sons Baking Co. v. ITT Continental Baking Company, Inc.,* 668 F.2d 1014, 1027 (9th Cir.1981). Though stated separately, these three elements are interrelated. *Id.* at 1029. The central purpose of the attempted monopoly offense is to discourage unilateral activity that poses a threat to competition. *Hunt-Wesson, supra,* 627 F.2d at 925.

■ This Court has found defendants lacked a significant market share of the relevant market. Therefore, no attempt claim can be stated absent a showing that defendants' conduct has an anticompetitive effect in the relevant market. *Id.* at 926. Only if plaintiff is able to show that defendants' conduct had an anticompetitive effect could it possibly state an attempt claim.[6] *Inglis, supra,* 668 F.2d at 1029 n. 11. If plaintiff prevails on its section 1 claim, which has been severed for trial, the attempt claim will be subsequently considered. If plaintiff fails under section 1, the Court finds, as a matter of law, no attempt claim can be stated and summary judgment for defendants will be entered.

A conspiracy to monopolize claim is similar to an attempt to monopolize action. *Hunt-Wesson, supra,* 627 F.2d at 926. As with the attempt claim, summary judgment will be entered for defendants unless plaintiff can show defendants' actions had an anticompetitive effect.

IT IS SO ORDERED.

**6.** This result is reached because proof of a § 1 violation may allow intent and dangerous probability of success to be inferred. *Inglis,* 668 F.2d at 1029 n. 11; *Janich Brothers, Inc. v. American Distilling Co.,* 570 F.2d 848, 854 (9th Cir.1977), *cert. denied,* 439 U.S. 829, 99 S.Ct. 103, 58 L.Ed.2d 122 (1978).