**BEUTLER SHEETMETAL WORKS, a California corporation; and River City Mechanical, a sole proprietorship, Plaintiffs,**

v.

**McMORGAN & COMPANY, a California corporation; and Carpenters Pension Trust Fund For Northern California, Defendants.**

**No. C–82–6269 EFL.**

United States District Court, N.D. California.

Aug. 14, 1985.

Thierman, Simpson & Cook, Dennis B. Cook, Sacramento, Cal., for plaintiffs Beutler Sheetmetal Works and River City Mechanical.

Victor J. Van Bourg, Michael B. Roger, Robert M. Hirsch, Van Bourg, Weinberg, Roger & Rosenfeld, A Professional Corp., Stanton & Kay, San Francisco, Cal., for defendant Carpenters Pension Trust Fund for Northern Cal.

Charles T.C. Compton, Peter J. Courture, Richard J. Gray, Wilson, Sonsini, Goodrich & Rosati, A Professional Corp., Palo Alto, Cal., for defendant McMorgan & Company.

## SUMMARY JUDGMENT

LYNCH, District Judge.

This matter is before the Court on defendants' Carpenters Pension Trust Fund for Northern California ("Trust Fund") and McMorgan & Company ("McMorgan") motion for summary judgment. The Trust Fund is an employee benefit trust established pursuant to a collective bargaining agreement between Carpenters 46 Northern California Conference Board and various employers and employer associations. McMorgan is an investment management service that administers the Trust Fund's investments. At issue is whether the Trust Fund's policy of conditioning its mortgage financing of residential housing on the construction of the units by union craftspersons violated section 1 of the Sherman Act.

The plaintiffs, Beutler Sheetmetal Works ("Beutler") and River City Mechanical ("River City") are heating, ventilating and air conditioning contractors. During 1982 and 1983, both Beutler and River City subcontracted with Citation Builders ("Citation") on several projects in the Sacramen-

to area. During this same period, Beutler also performed heating and air conditioning work for Morrison Homes ("Morrison"). Neither of the plaintiffs are presently covered by a collective bargaining agreement.

Morrison and Citation used Trust Fund monies for mortgage financing of their residential developments. As contained in the Trust Fund's commitment letter initiating the investment, all "carpenters, laborers, operating engineers, cement masons and construction teamsters" employed at a work site financed by the trust fund had to be covered by a collective bargaining agreement with either AFL–CIO or Teamster affiliated unions. As construed by the Trust Fund's administrator, McMorgan, this restriction included heating, ventilation and air conditioning contractors.

As a result of this limitation in the Trust Fund's commitment letter, both Morrison and Citation terminated their contracts with the plaintiffs. After being notified by McMorgan that a continuation of its subcontract with Beutler would result in a withdraw of all funding, Morrison cancelled its subcontract with Beutler in November 1982. Citation cancelled its contracts with both Beutler and River City after being warnèd by McMorgan that failure to do so would result in the builder losing millions of dollars in residential mortage financing.

As it now stands,[1] the complaint alleges a conspiracy between McMorgan and the Trust Fund to coerce several developers of residential housing in the Sacramento area (including Morrison and Citation) to boycott the plaintiffs. Such a conspiracy, the plaintiffs allege, constitutes a *per se* violation of the Sherman Act. In addition, the plaintiffs claim that this boycott intentionally interfered with existing contracts and obstructed future business relations.

The defendants move for summary judgment on the section 1 antitrust claim based on two separate arguments.[2] First, the defendants argue that the plaintiff has failed to provide any probative evidence of concerted action necessary for a violation of section 1. Second, the defendants contend that even if a conspiracy can be established, the conduct complained of does not constitute a *per se* violation of the Sherman Act. The defendants assert that a vertical boycott by non-competitors must be evaluated under the rule of reason. As required by the rule of reason, the plaintiffs must show some harm to the relevant market as a result of anticompetitive conduct. *Fine v. Barry and Enright Productions*, 731 F.2d 1394, 1399 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 248, 83 L.Ed.2d 186 (1984); *Cascade Cabinet Co. v. Western Cabinet & Millwork, Inc.*, 710 F.2d 1366, 1373 (9th Cir.1983). The defendants contend that the plaintiffs' failure to define a relevant market or to prove actual harm to competition in that market entitles them to summary judgment on the section 1 claims.

## I.

Summary judgment is proper only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue as to any material fact and summary judgment must be denied if the facts supporting the

---

1. The plaintiffs filed their initial complaint in this action on November 12, 1982, asserting a single claim for relief under section 1 of the Sherman Act. The plaintiffs amended their complaint six months later to add the state tort causes of action for intentional interference with contract and with prospective business relations. These state claims arise from the same factual allegations contained in the Sherman Act claim. The plaintiffs have moved for a second amendment to their complaint. As this amendment does not affect the defendants' summary judgment motion, the Court grants the plaintiffs' motion and will consider the complaint as it stands after the second amendment.

2. As the Court's jurisdiction over the state law claims in the complaint is pendant upon the federal antitrust causes of action, should the defendants prevail on summary judgment, the Court would exercise its discretion and dismiss the remaining claims without prejudice. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

motion do not establish the nonexistence of such an issue. *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F.2d 665 (9th Cir.1980). If, however, the moving party meets its burden, then the opposing party must come forward with significant probative evidence supporting its complaint. *R.C. Dick Geothermal Corp. v. Themogenics, Inc.,* 566 F.Supp. 1104, 1107 (N.D.Cal.1983).

## A. *Conspiracy Element*

■ Section 1 of the Sherman Act, 15 U.S.C. § 1, makes unlawful those contracts, combinations or conspiracies that unreasonably restrain trade. *Board of Trade v. United States,* 246 U.S. 231, 238, 38 S.Ct. 242, 244, 62 L.Ed. 683 (1918). Thus, under Section 1 there must be concerted action. Independent action is not proscribed. *Monsanto Co. v. Spray-Rite Service Corp.,* 465 U.S. 752, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984).

The plaintiffs allege a conspiracy between the Trust Fund, its administrator McMorgan and several developers and mortgage lenders. According to the complaint, the Trust Fund, through McMorgan, coerced builders and their lenders to terminate subcontracts obtained by the plaintiffs and others not covered by a collective bargaining agreement. Thus, there are two conspiracies alleged: the one between McMorgan and the Trust Fund and the one between the Trust Fund (including McMorgan) and the developers-lenders.

## 1. Developers-Lenders

As to the developer-lender conspiracy, the defendants contend that there is no evidence that these individuals influenced or were at all involved in the establishment of the union-only investment policy of the Trust Fund. They were merely the recipients of restrictive commitment letters. In no way did these alleged co-conspirators knowingly participate in the investment decisions of the Trust Fund.

■ Such knowing participation, however, is a prerequisite to liability under Section 1. As held by the Supreme Court in *Spray-Rite,* the law requires direct or circumstantial evidence that reasonably tends to prove that the defendants had a conscious commitment to a common scheme designed to acheive an unlawful objective. *Spray-Rite,* 104 S.Ct. at 1471.

■ After nearly three years of discovery, the plaintiffs have provided no evidence that any of the builders or lenders shared with the defendants any unlawful or anticompetitive purposes. The record is clear that loan originators simply agreed to sell a relative small number of mortgages to the Trust Fund meeting the union-only restriction. The contractors merely enforced their existing policy of hiring only those subcontractors who had signed collective bargaining agreements.[3] Such acquiescence to the Trust Fund's demand in order to avoid termination is not actionable as an antitrust conpiracy. *See Spray-Rite,* 104 S.Ct. at 1469.

The facts presented in this case are clearly distinguishable from those in the case cited by the plaintiffs, *Larry V. Muko, Inc. v. Southwestern Pennsylvania Building and Construction Trades Council,* 609 F.2d 1368 (3rd Cir.1979), *cert. denied,* 459 U.S. 916, 103 S.Ct. 229, 74 L.Ed.2d 182 (1982). In the *Muko* case, the court held that a defendant corporation's active participation in formulating union-only contracting restrictions exposed it to antitrust liability under section 1. By contrast, in the present case there is no evidence presented that the contractors or lenders participated in any way in the formulation or implementation of the Trust Fund restrictions. The record before that Court shows that the union-only restriction in the commitment letters was simply a unilateral investment decision by the Trust Fund, in association with McMorgan.

As the plaintiffs provide no evidence that the defendants conspired with contractors

---

**3.** When Beutler and River City commenced performing work for Citation and at the time Beutler contracted with Morrison, each was a signatory to a collective bargaining agreement with Sheetmetal Local 162.

or lenders in arriving at the challenged restriction in the commitment letter, summary judgment is appropriate as to this conspiracy allegation. *See First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968) (absence of any significant probative evidence tending to support the complaint entitles moving party to summary judgment.)

### 2. Trust Fund—McMorgan

The second conspiracy alleged by the plaintiffs, and upon which they principally rely in opposing the motion for summary judgment, is between the Trust Fund and its administrator, McMorgan. The defendants contend that as a matter of law McMorgan was not sufficiently independent of the Trust Fund to be able to conspire to violate the antitrust laws.

The defendants rely on three cases to support their contention. In all three, the courts ruled that a pension fund trustee was incapable of conspiring with the trust to violate section 1. In *Austin v. House of Vision, Inc.*, 404 F.2d 401, 403 (7th Cir. 1969), the court held that where a trustee's duties were limited to the administration of the fund pursuant to its written provisions, there could be no actionable conspiracy. "There was no allegation of conspiracy in restraint of trade among *competitors*, the proscription of which is contemplated by section 1 of the Sherman Act." *Id.* In *Graham v. Hudgins, Thompson, Ball & Associates, Inc.*, 319 F.Supp. 1335, 1337 (N.D.Okla.1970), the district court adopted the *Austin* holding and ruled that where a trustee's duties were limited to the administration of the plan, then there was not a "plurality of actors" as required by section 1. "As trustee, it can only do that which ... the settlor of the trust has prescribed." *Id.* The most recent case, *Golden v. Kentile Floors, Inc.*, 475 F.2d 288, 290 (5th Cir.1973), also held that trustees responsible for the investment of trust funds cannot be a participant in a combination or conspiracy in restraint of trade.

To hold the trustee liable for an antitrust violation under circumstances here present would presage liability for a host of servicing agents only fortuitously connected with the Sherman Act defendants. Supreme Court precedent makes clear. that participation in a combination is illegal only when, at a minimum, it manifestly results from the family of procompetitive or anticompetitive objectives related to the relevant market.

*Id.* at 290–91. As the record in *Kentile* established that the trustee's role was limited to investment functions and was not directed toward excluding potential competitors from the market, it could not be construed to have conspired to violate section 1.

The facts surrounding McMorgan's relationship with the Trust Fund are not in dispute. McMorgan was a fiduciary to the Trust under ERISA and as such had a duty to manage the fund assets prudently and in accordance with the Trust Fund's investment guidelines. McMorgan assisted in the formulation of the union-only policy and advised the investment committee to include such a condition on its mortgage commitment letter. In addition, as part of its managment of the Trust Fund, McMorgan interpreted the commitment letter's restriction to include all construction workers, not just those categories expressly enumerated in the commitment letter itself. Its implementation of the union-only restriction was simply one part of its overall responsibility for securing mortgage financing instruments for the Trust Fund.

Looking at these facts, it is .clear that McMorgan operated only as an administrator and trustee of the Trust Fund. The cases cited above do not require a trustee to remain passive in order to avoid Sherman Act liability. Rather, what is required is that the trustee act as the agent of the Trust in carrying out its expressed investment policies. · That McMorgan acted in such a representative capacity is evident from the uncontroverted facts in this case.[4]

---

**4.** The plaintiffs conceding in their answer to       defendants' interrogatory 110 that McMorgan

That the investment manager construed an enumerated list contained in a commitment letter to include heating, ventilating and air conditioning contractors does not establish that McMorgan acted autonomously in pursuing their interests beyond or as distinct from those of the Trust Fund.

Where, as here, the investment manager was not a competitor or in any way motivated by anticompetitive objectives, the relationship between McMorgan and the Trust Fund cannot be construed as a conspiracy to violate section 1. To hold otherwise would expose ERISA fiduciaries to antitrust liability for any investment decisions promulgated or enforced by them in furtherance of the trust's objectives. *Kentile*, 475 F.2d at 290. As there is no allegation of a restraint of trade among competitors, the proscriptions of the Sherman Act should not be called into play. *Austin*, 404 F.2d at 403.

The Court, therefore, holds that under the circumstances presented here McMorgan was incapable as a matter of law of conspiring with the Trust Fund to violate section 1. As the plainiffs have failed to provide any probative evidence to support their other allegations of conspiracy, the Court finds that the requisite contract, combination or conspiracy for section 1 liability has not been established. The defendants, therefore, are entitled to summary judgment on count 1 and the Court need not reach the other arguments asserted by the defendants in support of their motion.

As there are no federal claims remaining, the Court dismisses the remaining pendant state claims without prejudice.

IT IS SO ORDERED.

acted as an agent or representative of the Trust Fund with respect to all of the wrongful acts alleged in the complaint.